STATE OF LOUISIANA

VERSUS

CHARLES R. LANE

NO. 20-KA-137

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 18-2090, DIVISION "P"
HONORABLE LEE V. FAULKNER, JR., JUDGE PRESIDING


December 23, 2020


**FREDERICKA HOMBERG WICKER**
**JUDGE**


Panel composed of Judges Fredericka Homberg Wicker,
Marc E. Johnson, and Hans J. Liljeberg


<u>**AFFIRMED**</u>
> **FHW**
> **MEJ**
> **HJL**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
Honorable Paul D. Connick, Jr.
Thomas J. Butler
Anne M. Wallis

COUNSEL FOR DEFENDANT/APPELLANT,
CHARLES R. LANE
David F. Gremillion
Ravi G. Shah

**WICKER, J.**

On June 20, 2018, the Jefferson Parish District Attorney filed a bill of information charging defendant, Charles R. Lane, with the following offenses occurring on or about April 12, 2018: possession with intent to distribute cocaine weighing 28 grams or greater, in violation of La. R.S. 40:967(A) (count one); possession of methamphetamine weighing less than 2 grams, in violation of La. R.S. 40:967(C) (count two); aggravated criminal damage to property belonging to the Jefferson Parish Sheriff's Office, in violation of La. R.S. 14:55 (count three); and aggravated flight from an officer, in violation of La. R.S. 14:108.1(C) (count four).[1] On June 26, 2019, a unanimous jury returned a verdict of guilty as charged on counts one, two, and four. On count three, the jury found defendant guilty of simple criminal damage to property where the damage amounted to one thousand dollars but less than five thousand dollars. On appeal, defendant assigns the following errors:

I. The trial court erred when it denied defendant's motion for new trial because it allowed testimony that under Louisiana law called for a mistrial or admonishment of the jury, yet the trial court did neither.

II. The trial court violated defendant's constitutional rights and due process rights by allowing the admission of inadmissible and prejudicial evidence.

III. The jury erroneously convicted appellant of the crimes charged because there was not sufficient evidence to do so.

For the following reasons, we affirm Defendant's convictions and sentences.

## PROCEDURAL HISTORY

On July 23, 2018, Defendant was arraigned and pled not guilty on all counts. Defendant filed a motion to suppress evidence, which was denied on October 11,

---

[1] As to count four, the bill of information specifically charged defendant with intentionally refusing to bring a vehicle to a stop, under circumstances wherein human life was endangered, knowing he had been given a visual and audible signal to stop by Lieutenant D. Dubroc of the Jefferson Parish Sheriff's Office when the officer had reasonable grounds to believe that defendant had committed an offense.

2018. This Court denied defendant's writ application seeking review of that ruling on January 22, 2019. *State v. Lane*, 18-733 (La. App. 5 Cir. 1/22/19) (unpublished writ disposition), *writ denied*, *State v. Lane*, 19-280 (La. 4/8/19), 267 So.3d 613.

On May 23, 2019, the State filed a notice of intent to call Detective John Wiebelt of the Jefferson Parish Sheriff's Office (JPSO) Narcotics Division as an expert in the field of illicit narcotics, packaging, quantity, and pricing. On May 28, 2019, defendant filed a motion for a *Daubert/Foret*[2] hearing to exclude Detective Wiebelt's testimony, and an "expert witness hearing" was held that same day. At the conclusion of the hearing, because the State had not had the opportunity to respond to the Defense's motion in writing, the trial court reset the matter for a motion hearing relative to defendant's *Daubert/Foret* hearing request. The defense's motion was eventually denied and Detective Weibelt was qualified as an expert on June 24, 2019.

On June 12, 2019, the State filed a notice of intent to offer evidence of defendant's other crimes, wrongs, or acts pursuant to La. C.E. art. 404(B)(1). The State sought to introduce evidence of the facts and circumstances of defendant's May 31, 2002 arrest leading to his September 20, 2002 convictions for possession with intent to distribute cocaine in violation of La. R.S. 40:967(A) and possession with intent to distribute marijuana in violation of La. R.S. 40:966(A).

On June 20, 2019, the State filed a supplemental notice of intent to admit evidence of other acts under La. C.E. art. 404(B) and a notice of *res gestae* regarding "the set up purchase with the [confidential informant] and the defendant."

On June 21, 2019, defendant filed an objection and motion *in limine* to the State's notice of intent to offer *res gestae* evidence under La. C.E. art. 404(B),

---

[2] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *State v. Foret*, 628 So.2d 1116 (La. 1993).

contending the State could not elicit testimony on matters purportedly discussed between the confidential informant (CI) and defendant through any other parties. On the same day, defendant also filed an objection and motion *in limine* to the State's notice of intent to offer evidence of defendant's past conviction under La. C.E. art. 404(B).

Also on June 21, 2019, the State amended the bill of information as to count four, asserting that defendant violated La. R.S. 14:108.1(C), to reflect that defendant had been given a visual and audible signal to stop by Deputy John Walsdorf, not Lt. Dubroc, of the JPSO.

On June 24, 2019, the trial court held a hearing on the State's 404(B) notices, granting the State's 404(B) motion regarding defendant's prior guilty pleas in 2002 and the State's supplemental 404(B) notice of *res gestae*.

On June 25, 2019, the State amended the bill of information to reflect that defendant is also known as ("AKA") Charles R. Lane, Jr.  The State also amended the bill of information as to count three, asserting that defendant violated La. R.S. 14:55, to reflect that he did commit aggravated criminal damage to property belonging to the JPSO "where the damage amounted to $1,000 or more but less than $50,000."

Jury selection began on June 25, 2019.  On June 26, 2019, a unanimous jury returned a verdict of guilty as charged on counts one, two, and four.  On count three, the jury found defendant guilty of simple criminal damage to property where the damage amounted to one thousand dollars but less than fifty thousand dollars.

On July 15, 2019, defendant filed a motion for new trial, asserting that the trial court erred in overruling defendant's objection to admitting evidence of defendant's prior convictions and in denying defendant's motion for a mistrial.  On the same date, defendant also filed a motion for post-verdict judgment of acquittal. Defendant contended the State failed to prove that defendant possessed cocaine or

methamphetamine. Defendant also suggested that the criminal damage to property charge should have been rejected because defendant did not intentionally cause any damages, and defendant argued that defendant's flight, from persons he did not know were officers, was justified.

On August 21, 2019, the trial court denied defendant's motion for new trial and motion for post-verdict judgment of acquittal. The trial court sentenced defendant as follows: on count one, eighteen years imprisonment with the Department of Corrections; on count two, two years imprisonment with the Department of Corrections; on count three, two years imprisonment with the Department of Corrections; and on count four, five years imprisonment with the Department of Corrections.[3] The trial court ordered the sentences to run concurrently with each other.

On August 28, 2019, the State filed a multiple offender bill of information against defendant as to count four, alleging he was a third-felony offender under La. R.S. 15:529.1.[4] After initially objecting to the multiple bill, Defendant waived his objection and stipulated to the multiple bill on November 14, 2019. On the same day, the trial court vacated defendant's sentence as to count four and resentenced him to eight years imprisonment at hard labor to be served without benefit of probation or suspension of sentence and concurrent with the sentences previously imposed for counts one through three.

On December 23, 2019, defendant filed a motion to appeal and for appointment of the Louisiana Appellate Project, which the trial court granted on the same date.

---

[3] A sentence that commits a prisoner to the Department of Corrections is necessarily at hard labor. *See State v. Lawson*, 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 621 n.2.

[4] According to the multiple bill, on April 30, 2002, defendant pled guilty to possession of cocaine in violation of La. R.S. 40:967(C) in 24th Judicial District Court case number 01-5874, and on September 20, 2002, defendant pled guilty to possession with intent to distribute cocaine in violation of La. R.S. 40:967(A) and possession with intent to distribute marijuana in violation of La. R.S. 40:966(A) in 24th Judicial District Court case number 02-3536.

## JURISDICTIONAL NOTE

Defendant's motion for appeal was untimely filed, in that Defendant filed his motion for appeal on December 23, 2019, more than thirty days after the initial sentencing on August 21, 2019, more than thirty days after sentencing on the multiple bill on November 14, 2019, and more than thirty days after the denial of his oral request to reconsider his sentence (also November 14, 2019).[5] However, the trial court granted the motion for appeal on December 23, 2019, and the record does not reflect that the State objected to the untimeliness of the motion for appeal.

Therefore, in the interest of judicial economy and the avoidance of useless delay, we will consider the merits of this appeal. *See State v. Jones*, 15-157 (La. App. 5 Cir. 9/23/15), 176 So.3d 713, 716 (although the defendant's motion to reconsider his sentence and motion for appeal were untimely, this Court addressed the merits of the appeal in the interest of judicial economy); *State v. Fair*, 15-434 (La. App. 5 Cir. 12/23/15), 182 So.3d 1238, 1240 n.1, *writ denied*, 16-185 (La. 2/3/17), 215 So.3d 688 (where this Court addressed the merits of the defendant's appeal, even though the motion for appeal was untimely, to avoid further useless delay); *see also State v. Babineaux*, 08-705 (La. App. 5 Cir. 1/13/09), 8 So.3d 621, 623 (citing *State v. S.J.I.*, 06-2649 (La. 6/22/07), 959 So.2d 486); *State v. Shay*, 07-624 (La. 10/26/07), 966 So.2d 562).

## FACTS[6]

Sergeant Nicki Garnier testified that he was involved in a narcotics investigation on April 12, 2018, in which he received information that defendant, Charles Ray Lane Jr., was distributing narcotics on the east bank of Jefferson

---

[5] Louisiana Code of Criminal Procedure art. 914 provides that a motion for an appeal in a criminal matter must be made no later than "[t]hirty days after the rendition of the judgment or ruling from which the appeal is taken" or "[t]hirty days from the ruling on a motion to reconsider sentence filed pursuant to Article 881.1, should such a motion be filed." According to Code of Criminal Procedure art. 881.1, a defendant in felony cases has thirty days following the imposition of sentence to make or file a motion to reconsider sentence, unless the court sets a longer period at sentencing.

[6] The following factual account is derived from the testimony at trial.

Parish. Sergeant Garnier set up a controlled purchase between the confidential informant ("CI") and defendant by having the CI contact defendant from Sergeant Garnier's vehicle utilizing the speaker function on the CI's cell phone. Through this process, Sergeant Garnier testified that he received information that defendant would be delivering seven grams of cocaine to the Super 8 Motel and that he would be driving a dark-colored SUV.[7]

Captain Shane Klein testified that, on April 12, 2018, he was directed to a Super 8 Motel in Metairie, Louisiana. He relocated to the motel to get into a surveillance position and was looking for a dark-colored Tahoe driven by an individual who was thought to be delivering a quantity of drugs to the motel at approximately 1:00 a.m. He indicated that around that time, officers observed a Tahoe fitting the description arriving at the motel.

Sergeant Garnier and the CI were waiting in Garnier's unmarked police car when the defendant arrived at the Super 8 Motel at approximately 1:00 a.m. According to Sergeant Garnier, they received a phone call from defendant, which the CI answered using the speaker function, and the defendant said, "I'm here. Where you at?" Sergeant Garnier also observed "a dark-colored SUV traveling in a circle around the parking lot," and he advised other investigators in the area.

Captain Klein and Detective Allan Doubleday attempted to conduct an investigatory stop. According to the testimony of the two officers, Detective Doubleday approached from the front of the vehicle, and Captain Klein approached from the rear in an attempt to "box the vehicle in." Both officers were in unmarked F-150s with their lights activated.[8] Detective Doubleday testified that he exited his vehicle with a badge on his neck and his service weapon drawn. Although he was in plain clothes, Detective Doubleday announced himself as a

---

[7] Some officers testified that they were told to look for an older model blue Tahoe.
[8] Captain Klein testified that the lights and sirens on both vehicles were activated.

police officer and stated something to the effect of "Police. Stop. Don't move." Detective Doubleday stated that defendant "looked around, looked through his rearview mirror, put his vehicle in reverse" and backed up into Captain Klein's vehicle;[9] defendant was then able to maneuver from between the officers' vehicles and make an escape. Defendant fled the scene, and a vehicle pursuit took place with multiple marked and unmarked vehicles.

Sergeant Garnier testified that the call remained on speakerphone as officers attempted to stop defendant. Through the phone, which was still on speaker, he could hear the officers saying, "Police, Police. Don't move." Sergeant Garnier saw defendant flee from the police, but he was not involved in the pursuit.

Joshua Collins was employed by the JPSO from 2007 until August 2018. Prior to leaving the JPSO, he was a sergeant in the narcotics division. Mr. Collins did not observe the stop of defendant at the Super 8 on April 12, 2018. He testified that his vehicle was a police interceptor, which is "not marked, but it looks very much like a police car;" therefore, he had to stay outside of the parking lot. However, Mr. Collins knew, via radio communications, that officers were moving in to conduct a stop. As he came around to assist, he saw that defendant "had broken out of the box and was fleeing towards West Napoleon."

Mr. Collins testified that during the pursuit, defendant headed eastbound on West Napoleon, running a red light at Cleary Avenue and traveling at speeds in excess of seventy-five miles per hour. Defendant turned right onto North Causeway heading southbound and proceeded over the Airline Drive overpass. When he came down the overpass, defendant turned right on Andover and headed north on the "Causeway service road." Defendant then made a U-turn under the

---

[9] Captain Klein indicated that he did not think defendant knew he was behind him because defendant put his vehicle in reverse and struck Captain Klein's vehicle as soon as he saw the police presence. Captain Klein stated his vehicle sustained "minor bump damage," and he did not know if his vehicle had been repaired.

Airline overpass and began traveling south on the "Causeway service road," eventually turning left onto Burns Street.

Detective Benjamin Jones testified that he was positioned at the I-10 Service Road and Zenith looking for a Tahoe matching the CI's description on the way to the Super 8. He testified that he was involved in the pursuit, mainly on West Napoleon to Causeway, then he fell behind "quite a few marked units and quite a few unmarked police units" also in pursuit.

Deputy John Walsdorf testified that he also became involved in the pursuit. He was in a fully marked JPSO unit and observed the vehicle coming at a high rate of speed from West Napoleon onto Causeway. The vehicle left the roadway and hit the median while trying to turn onto Causeway. Deputy Walsdorf indicated that the detectives involved in the chase had their lights activated and that he also turned on his lights and sirens in the pursuit. Deputy Walsdorf caught up to defendant's vehicle and paced it from approximately five car lengths at a speed of approximately seventy-five miles per hour in a thirty-five mile per hour zone. He testified that there were other marked units behind him in the pursuit.

Mr. Collins testified that the lead vehicle in the pursuit changed multiple times until Defendant made the U-turn at Andover, when Mr. Collins became the lead vehicle and remained the lead vehicle until defendant arrived at his destination on Burns Street. According to Mr. Collins's testimony, five to ten marked units with lights and sirens assisted in the pursuit.

When Mr. Collins turned onto Burns Street, he testified that, while he did not witness the impact, it appeared as if defendant had hit an Impala on the side of the road and was stopped a car length past 2921 Burns Street. Mr. Collins approached defendant from the rear to "box him in." As he did so, Mr. Collins testified that defendant put his vehicle in reverse and hit the gas. The two vehicles impacted, causing Mr. Collins's airbags to deploy. Mr. Collins testified that

"Later, due to the impact, something in the engine compartment caught on fire," which eventually led to Mr. Collins's entire vehicle being on fire. Although the fire department was called, Mr. Collins testified that, because his vehicle was a SWAT vehicle containing volatile munitions, "the Fire Department wouldn't put out the fire until all of my ammunition was finished cooking off." Mr. Collins indicated that a "Department Vehicle Insurance Form" was completed and that his vehicle's estimated value was $20,950.

Because of the Tahoe's position next to the Impala following the impact with Mr. Collins, defendant's driver-side door would not open, and defendant was extracted from his vehicle via the passenger side and ultimately arrested. As defendant was being removed from the vehicle, an irate gentleman approached, yelling at officers to "[g]et off of him." Mr. Collins testified, and Detective Doubleday confirmed, that the gentleman ignored multiple commands to stop, after which Mr. Collins attempted to place him under arrest. When the gentleman resisted, Detective Doubleday testified that he assisted in trying to detain him.[10] During the struggle, Detective Doubleday was punched in the chest, and the gentleman was placed on the ground and handcuffed. Mr. Collins later learned the gentleman was defendant's relative, Mr. Henry Lane.

Detective Christopher Cade testified that he observed the attempted stop of defendant by officers at the Super 8 Motel. Detective Cade's vehicle could not keep up with the pursuit, but he relocated to 2921 Burns Street, where he observed that a collision had occurred between Sergeant Collins's and defendant's vehicles. He observed officers attempting to apprehend defendant and saw multiple people coming out of the apartment complex. He also testified that a small engine fire had

---

[10] He also said that Sergeant Garnier helped, which is somewhat in conflict with Sergeant Garnier's testimony that he arrived after the defendant had been apprehended and the police unit was already engulfed in flames.

started inside the vehicle Sergeant Collins was driving, which could not be extinguished. Detective Cade took photographs of the scene.

When Detective Jones arrived at 2921 Burns Street, defendant and a second individual were being handcuffed. Detective Jones conducted a search incident to arrest of defendant and located a clear plastic bag of white powder in defendant's front right pants pocket. While on the scene, Detective Jones conducted a field test on the powder, which returned a preliminary positive result for cocaine. Detective Jones also conducted a search of defendant's vehicle, where he located defendant's driver's license on the driver's-seat floorboard.[11]

Sergeant Garnier testified that he relocated to 2921 Burns Street once the pursuit had ended and he had parted ways with the CI. When he arrived, Sergeant Josh Collins's vehicle was engulfed in flames, defendant had been detained, and several subjects were standing on the front porch of the residence. He, along with Sergeant Collins, secured the residence prior to obtaining a search warrant. Sergeant Garnier spoke with two individuals who advised him that defendant resided in one of the rooms in the residence. According to Sergeant Garnier, at that time, the residence was not searched nor were photographs of the residence taken.

After officers learned that defendant lived at 2921 Burns Street, Mr. Collins realized they needed to search the residence.[12] Mr. Collins testified that, in his experience, narcotics dealers keep excess supply in their homes. He directed Detective Nathaniel Obiol to author a search warrant based on the information Mr. Collins provided to him, and Officers conducted a security sweep. During the security sweep, officers made sure the rooms were clear of people; Mr. Collins testified they did not search for any objects.

---

[11] Detective Jones did not photograph the field test, or NIK kit, and he did not submit it into evidence.
[12] Defendant's mother told Mr. Collins that defendant resided at that residence.

Detective Cade testified that everyone, including detectives, exited the residence after the security sweep and waited outside until the search warrant was authorized. After a commissioner signed the search warrant, Detective Cade entered the residence and took photographs before the residence was searched. Captain Klein explained that before any search began, Detective Christopher Cade would photograph the outside of a residence and then photograph the structure from the inside. During the search, as evidence was located, Detective Cade would take photographs of the evidence to show where seized evidence was located. A placard preceding Detective Cade's photographs of the residence and seized evidence was marked with a time of 1:09 a.m. He testified that the photograph of his placard showed the date and time of his arrival on scene, not the time he began taking pictures.

Mr. Collins testified when the search warrant was signed at 2:34 a.m., officers had authorization to begin a search for the items notated in the warrant. He indicated that the time on the search warrant return—2:35 a.m.—was the time the search warrant began.

Mr. Collins participated in the search of the residence. According to Mr. Collins, he searched the room that defendant's mother told him belonged to defendant. Mr. Collins testified that the room contained multiple photographs and defendant's high school diploma, as well as several pieces of mail addressed to defendant. On a nightstand, he located 4.5 dosage units of a substance that was later determined to be methamphetamine. In the left pocket of a jacket hanging in the closet, Mr. Collins located a clear plastic bag containing approximately 30 grams of a white rock-like substance that was later determined to be crack cocaine.

Mr. Collins also testified that he located paraphernalia, specifically razor blades and plastic bags, in the bathroom accessible solely through defendant's bedroom.[13]

Brian Schultz, a forensic chemist at the JPSO crime lab, performed an analysis on evidence seized in the instant case. Mr. Shultz concluded that the 4.5 units of ghost-shaped pills of various colors located on the night-stand contained methamphetamine and that the white rock-like object, which weighed approximately 28 grams, contained cocaine. However, Mr. Schultz testified that no controlled dangerous substances were detected in the white powder substance seized when officers searched defendant's person. Although he could not determine the nature of the substance, he opined that it was likely baking soda. He indicated that an on-scene field-test can return a false positive if too much acid is present in the substance.

Detective John Wiebelt testified as an expert in the field of distribution, quantity, and packing of valued narcotics. Detective Wiebelt reviewed the police reports and the scientific analysis report pertaining to this case, and he stated that "the weight alone in this case, I believe, is possession with the intent do [sic] distribute and solely possession with intent to distribute."[14] He testified that, in his experience, he has never seen a user possess 28 grams of crack cocaine. Concerning crack cocaine users, Detective Weibelt testified that a user will buy enough product to get a fix from the dealer and then immediately go somewhere to use it. The type of paraphernalia typically associated with a user is a small glass or metal pipe and a piece of Brillo pad or some other type of filter. A dealer, however, would typically purchase an ounce quantity, which the dealer then breaks

---

[13] Photographs of the crime scene, including photographs of vehicle damage, the interior of the residence at 2921 Burns Street, the recovered evidence, and items bearing defendant's name, were introduced and admitted into evidence with no objection from defense counsel.

[14] This testimony did not prompt an objection by the defense.

up (using a fingernail, razor blades, or a knife) into rock increments of approximately one-tenth of a gram to sell.

Detective Weibelt testified that an ounce of cocaine or crack cocaine would cost between "eight-hundred and fifty dollars to fourteen hundred." According to his testimony, a dealer will take that ounce and "break it down into rock increments which are about one-tenth of a gram," giving him 280 crack rocks from the 28 gram ounce that are each worth "from ten dollars to fifty dollars, depending on the size." He estimated the profit margin for the dealer would be "right under three-thousand to above twelve-thousand dollars." Detective Wiebelt also testified that the type of paraphernalia associated with a dealer includes baggies and razorblades.

Detective Wiebelt also testified that he listened to jail calls placed by defendant.[15] The jail calls were played during Detective Wiebelt's testimony at trial. He testified that during an April 13, 2018 call, defendant and a female talked about the identity of the "R-A-T," which Weibelt took to mean the CI who "set up" defendant. Detective Weibelt testified to parts of an April 14, 2018 phone call that he claimed were indicative of drug distribution. He explained that, in his experience, people in the defendant's position speak in code when referring to drugs. During the April 14, 2018 phone call, a female spoke about cleaning up and washing clothes. Detective Wiebelt stated that "[t]hings like this are used to talk about cleaning up things that the police may not have found out about her [sic] drugs or paraphernalia or firearms or anything like that." During an April 15, 2018 call, Detective Wiebelt testified, defendant referred to drugs as "yams."

---

[15] Detective Sheri Theriot, the custodian of records for jail calls from the Jefferson Parish Correctional Center, testified that all calls from the correctional center are recorded and kept on an internet-based system. She generated copies of defendant's recorded phone calls.

During the April 14, 2018 phone call, Detective Wiebelt also testified that defendant was asked how to turn the light off in his closet, and his description of the closet and the location of the light switch matched the crime scene photographs of the closet where officers located the crack cocaine. While listening to a call placed on April 23, 2018, Detective Weibelt testified that defendant admitted that he was involved in a high-speed pursuit, that he was charged with drug and flight charges, and that "[t]hey got [him] with a nice little bit." At the conclusion of his testimony, Detective Weibelt stated, "My expert opinion, based on all of the facts and circumstances in this case, is that Mr. Lane was possessing the cocaine with the sole intent to distribute it."

Detective Lieutenant Jason Renton testified that he assisted in a crack cocaine investigation involving defendant on May 31, 2002. According to Lieutenant Renton, officers had a CI purchase cocaine from defendant, and based on that purchase, they obtained a search warrant for defendant's residence at 2924 Burns Street.[16] A search of the residence returned seventeen grams of crack cocaine and 17.8 grams of marijuana located inside a closet. Officers also seized paraphernalia—specifically, a box of Glad clear bags and several plastic bags with the corner cut off. Lieutenant Renton testified that a picture of defendant was located in the hall outside of the bedroom where the narcotics were seized and that men's clothing was located in the closet. According to Lieutenant Renton, defendant told an officer the room was not his but later recanted and stated the drugs were his. He testified that he learned from JeffNet that defendant pled guilty to the charges stemming from the May 31, 2002 arrest. A certified record of

_____

[16] Lieutenant Renton was not responsible for "running" the CI during the 2002 investigation, and he did not recall if he was present during surveillance of the purchase.

defendant's *Boykin*[17] and the minute entry for his guilty plea were introduced and admitted into the record.[18]

The defense called Kira Lennix, the girlfriend of defendant's cousin Henry Lane. She testified that at 1:00 a.m. on April 12, 2018, Mr. Lane received a phone call and placed the call on speakerphone. During the call, defendant stated the police were following him, so Ms. Lennix went outside to make sure nothing happened to him.[19] As she waited on the front steps, Ms. Lennix heard sirens in the distance and saw defendant driving underneath the Causeway bridge. Ms. Lennix testified that defendant was driving her truck. According to her testimony, defendant parked the vehicle and turned everything off, "and then about maybe five, not quite five minutes, but then comes the police; and then he rams into the back of my car." She denied that defendant put the vehicle in reverse.

After the collision, Ms. Lennix testified, the police pulled defendant from the vehicle through the passenger side and "proceeded to throw him on the ground." According to Ms. Lennix, Mr. Lane asked the officers, "[d]o y'all really have to do that to him?" She indicated that two officers responded by grabbing Mr. Lane and pulling him down the stairs, where they tried to throw him against the car, and then put him down on the ground and kicked him in the face. Ms. Lennix testified that the front of the Mr. Collins's truck was only smoking when the fire department arrived. She stated, "They acted like they couldn't do anything or put it out until [the fire] completely engulfed the whole truck." She indicated that the fire also damaged the back of her truck, as well as the Impala.

According to Ms. Lennix, within twenty to thirty minutes, officers entered the house and went upstairs. She testified that officers asked who lived there, and

---

[17] *Boykin v. Alabama*, 395 U.S 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969).
[18] Defense counsel stated he had no objection to the exhibit.
[19] Also present in the apartment with Ms. Lennix were Torial Bannister (defendant's sister), and her two young children, "Brianna," and Mr. Lane. Kira did not know Brianna's last name.

someone indicated that defendant's sister lived there. Ms. Lennix then stated that officers threatened to take defendant's sister's children if she did not tell them where defendant's room was. She testified that officers got everyone out of the house, but Ms. Lennix went back inside the house to get socks and pants for the young children, and she was saw officers rummaging around defendant's room before the officers exited the house and everyone sat on the porch waiting for a warrant. She stated that officers went back into the house for no more than five minutes after the warrant was signed.

## SUFFICIENCY OF EVIDENCE [20]

Defendant argues the evidence was insufficient on the following three counts: count one, possession with intent to distribute cocaine in violation of La. R.S. 40:967(A); count two, possession of a controlled dangerous substance, to wit: methamphetamine weighing less than two grams in violation of La. R.S. 40:967(C); and count three, aggravated criminal damage to property in violation of La. R.S. 14:55.

As to count one, defendant asserts that thirty grams of cocaine could have been for personal use, arguing that there were no items such as scales, baggies, or small denominations of cash found in conjunction with the cocaine to illustrate that defendant was dealing drugs. Defendant further argues that the State failed to prove beyond a reasonable doubt that defendant possessed the cocaine, stating that the cocaine was found in a jacket in a bedroom that officers allege belonged to

---

[20] When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, such as the erroneous admission of evidence, the reviewing court should first determine the sufficiency of the evidence by considering all of the evidence, including evidence the trial court may have erroneously admitted. *State v. Hearold*, 603 So.2d 731, 734 (La. 1992); *State v. Mayeux*, 94-105 (La. App. 5 Cir. 6/28/94), 639 So.2d 828, 834. If the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. However, if the appellate court finds that the totality of the evidence was sufficient to support the defendant's conviction, it must then determine whether the trial court erred in admitting the questioned evidence and, if so, whether the trial court's error requires a reversal of the conviction or was harmless. *State v. Alexis*, 98-1145 (La. App. 5 Cir. 6/1/99), 738 So.2d 57, 64, *writ denied*, 99-1937 (La. 10/13/00), 770 So.2d 339.

defendant and suggesting that "anyone with access could have put these narcotics in the jacket."

Similarly, as to count two, defendant asserts that the methamphetamine was found in the room allegedly belonging to defendant, but the State failed to prove that he possessed the narcotics. Defendant argues that the narcotics could have been placed on the nightstand by anyone who had access to the room. Defendant points out this was a "small amount of methamphetamine" and that defendant was charged with possession of methamphetamine rather than possession with intent to distribute methamphetamine. He suggests that "it makes logical sense that [defendant] was either selling both narcotics, or neither, and that all of the cocaine and methamphetamine was for personal use."

As to count three, defendant asserts that he did not have the intent to damage police vehicles because he did not know them to be police vehicles when the stop was initiated.

The standard of review for sufficiency of the evidence challenges is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under the *Jackson* standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Ray*, 12-684 (La. App. 5 Cir. 4/10/13), 115 So.3d 17, 19, *writ denied*, 13-1115 (La. 10/25/13), 124 So.3d 1096 (citing *State v. Jones*, 08-20 (La. App. 5 Cir. 4/15/08), 985 So.2d 234, 240).

The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Paul*, 15-501 (La. App. 5 Cir. 1/27/16), 185 So.3d 188, 198 (citing *State v. Mitchell*, 99-3342 (La. 10/17/00), 772 So.2d 78, 83 (quotation omitted)).

It is the role of the fact-finder to weigh the credibility of the witnesses, and a reviewing court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluation under the *Jackson* standard of review. *Id.* at 199-200 (citing *State v. Bailey*, 04-85 (La. App. 5 Cir. 5/26/04), 875 So.2d 949, 955, *writ denied*, 04-1605 (La. 11/15/04), 887 So.2d 476, *cert. denied*, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005)). It is not the function of the appellate court to assess the credibility of witnesses or re-weigh the evidence. *Id.* at 200 (citing *State v. Marcantel*, 00-1629 (La. 4/3/02), 815 So.2d 50, 56).

### *Counts One and Two*

Count one, possession with intent to distribute cocaine in violation of La. R.S. 40:967(A) and count two, possession of methamphetamine weighing less than two grams in violation of La. R.S. 40:967(C) have a common statutory element. To prove the offense of possession with intent to distribute cocaine, in violation of La. R.S. 40:967(A), the State was required to show defendant knowingly and intentionally possessed cocaine and that he did so with the specific intent to distribute it. *Id.* at 199 (citing *State v. Haynes*, 09-109 (La. App. 5 Cir. 2/9/10), 34 So.3d 325, 337, *writ denied*, 10-493 (La. 9/24/10), 45 So.3d 1073). To prove the

offense of possession of methamphetamine, the State was required to show that defendant knowingly and intentionally possessed methamphetamine. *See* La. R.S. 40:967(C).

Possession of a controlled dangerous substance can be established by actual physical possession or constructive possession, and the determination of whether sufficient possession exists to convict is dependent upon the facts of each case. *Paul*, 185 So.3d at 198 (citing *State v. Major*, 03-3522 (La. 12/1/04), 888 So.2d 798, 802). In order to prove constructive possession, the evidence must show control or dominion over, as well as guilty knowledge of, the contraband. Factors that may establish control or dominion for purposes of constructive possession include knowledge that the drugs were in the area, relationship with the person found to have possession, access to the area where the drugs were found, evidence of recent drug use, and physical proximity to the contraband. *Id.* at 200 (citing *State v. Toups*, 01-1875 (La. 10/15/02), 833 So.2d 910, 913; *State v. Lewis*, 04-1074 (La. App. 5 Cir. 10/6/05), 916 So.2d 294, 299, *writ denied*, 05-2382 (La. 3/31/06), 925 So.2d 1257).

The evidence presented at trial supports the conclusion that defendant had constructive possession of methamphetamine and cocaine. The State presented evidence that the bedroom and the closet where the narcotics were discovered belonged to defendant. Sergeant Garnier testified that two individuals on the scene advised him that defendant resided in one of the rooms of the residence, and Mr. Collins testified that defendant's mother told him which room belonged to defendant. Mr. Collins also testified that photographs of defendant and items bearing defendant's name, such as a high school diploma and multiple pieces of mail addressed to defendant, were located in the room along with the drugs. Defendant's own witness, Ms. Lennix, testified that she saw officers rummaging around "[i]n Charles' room." In addition, the State presented audio of a phone call

between defendant and a female, during which she asked how to turn off the light in his closet. During the call, defendant described the setup of his closet, which Detective Wiebelt testified matched the crime scene photos of the closet that housed the jacket containing cocaine. Therefore, the jury could have found beyond a reasonable doubt that defendant resided at 2912 Burns Street and had access and control over the bedroom and closet that contained the seized narcotics.

As to the element of intent to distribute, intent is a condition of mind which is usually proven by evidence of circumstances from which intent may be inferred. *Id.* (citing *State v. Hearold*, 603 So.2d 731, 735 (La. 1992)). Multiple factors are to be considered in determining intent: 1) previous attempts to distribute; 2) whether the drug was in a form consistent with distribution to others; 3) the amount of the drug; 4) expert or other testimony showing the amount found in the defendant's possession to be inconsistent with personal use only; and 5) paraphernalia evidencing an intent to distribute. *Id*. This Court has held that these factors are useful and that the evidence need not fall squarely within them for the jury to find sufficient evidence of the intent to distribute. *Id.* (citing *State v. Mosley*, 08-1318 (La. App. 5 Cir. 5/12/09), 13 So.3d 705, 711, *writ denied*, 09-1316 (La. 03/05/10) 28 So.3d 1002). In the absence of these circumstances from which an intent to distribute may be inferred, the mere possession of drugs does not evidence intent to distribute, unless the quantity is so large that no other inference is possible. *State v. Smith*, 12-247 (La. App. 5 Cir. 12/11/12), 106 So.3d 1048, 1056.

In this case, the State presented sufficient evidence to support the conclusion that defendant possessed cocaine with the intent to distribute. The white rock-like substance seized from the jacket in defendant's closet, which tested positive for cocaine, had a net weight of 28 grams. Detective Wiebelt gave expert testimony 28 grams, or one ounce, of crack cocaine was consistent with distribution and

inconsistent with personal use, possibly yielding a profit somewhere between three thousand dollars and twelve thousand dollars. Detective Wiebelt also indicated that he had never seen a user possess twenty-eight grams of crack cocaine, and he stated that his opinion was that "the weight alone in this case . . . is possession with the intent do [sic] distribute and solely possession with intent to distribute."

Detective Weibelt also indicated that the plastic baggies and razor blades located in the bathroom, which could only be accessed through defendant's bedroom, were the type of paraphernalia commonly associated with distribution. He indicated that a dealer would use a knife, fingernail, or razor blade to cut up the one-ounce quantity of crack cocaine, and he testified that a dealer will have baggies. Considering the whole record, we find that any rational trier of fact could have found the defendant guilty of possession with intent to distribute cocaine and possession of methamphetamine beyond a reasonable doubt.

The State also presented evidence that defendant pled guilty to possession with intent to distribute cocaine and possession with intent to distribute marijuana in 2002. The facts and circumstances of the 2002 arrest were similar to the instant matter. Lieutenant Renton testified that in the previous investigation, 17 grams of crack cocaine and 17.8 grams of marijuana were found in a closet containing men's clothing during a search of defendant's residence at 2924 Burns Street. In addition, officers seized paraphernalia consisting of a box of Glad clear bags and several plastic bags with the corner cut off. The Louisiana Supreme Court opined in *Hearold*, that the amount of drugs seized from the defendant was insufficient, on its own, to convict the defendant of possession with intent to distribute, but when combined with evidence of prior drug distribution, "could provide a basis for a rational trier of fact to conclude beyond a reasonable doubt that defendant intended to distribute." 603 So.2d at 736.

In this case, the evidence was sufficient for the jury to find that the defendant knowingly possessed both the cocaine that was found in a jacket in his closet and the methamphetamine that was located on the nightstand in his bedroom.  Furthermore, the jury accepted Detective Wiebelt's testimony that the quantity of crack cocaine seized, was consistent with possession with intent to distribute.  It is not the function of the appellate court to assess the credibility of witnesses or re-weigh the evidence.  *Kenner*, 106 So.3d at 1088.  Additionally, the presence of plastic bags and razorblades in the adjoining bathroom, which Detective Wiebelt testified was indicative of distribution, and the evidence of defendant's prior convictions for possession with intent to distribute cocaine and possession with intent to distribute marijuana, lead to the conclusion that the evidence was sufficient for the jury to find that defendant possessed the one-ounce quantity of crack cocaine with the specific intent to distribute it.

### *Count Three*

As to count three, aggravated criminal damage to property in violation of La. R.S. 14:55, defendant challenges the sufficiency of the evidence for an offense for which he was not convicted.  While both defendant and the State present arguments relative to the sufficiency of the evidence for a conviction of aggravated criminal damage to property, and the State incorrectly asserted in its brief that defendant was found guilty as charged as to each count charged in the bill of information, Defendant was actually convicted of simple criminal damage to property where the damage amounted to $1,000 but less than $50,000.[21]

---

[21] Pursuant to Louisiana Code of Criminal Procedure art. 814(42), a verdict of guilty of simple criminal damage to property where the damage amounted to $1,000 or more, but less than $50,000 is responsive to aggravated criminal damage to property if the words "belonging to another and with damage amounting to ___ dollars are included in the indictment."  Thus, because the amended bill of information in this case asserted that defendant committed aggravated criminal damage to property "belonging to the JPSO where the damage amounted to $1,000 or more but less than $50,000," the verdict returned by the jury was a responsive verdict pursuant to Code of Criminal Procedure art. 814.

However, because the double jeopardy clause of the Fifth Amendment requires an acquittal in the event that a reviewing court finds no evidence of the crime charged or an essential element thereof, when sufficiency of the evidence is raised, reviewing courts will consider the merits of those claims. *See State v. Peoples*, 383 So.2d 1006, 1008 (La. 1980) (citing *State v. Bowen*, 376 So.2d 147 (La.1979)); *State v. Raymo*, 419 So.2d 858, 861 (La. 1982). The record does not indicate that either party objected to the responsive verdict of simple criminal damage to property where the damage amounted to $1,000 but less than $50,000. If the defendant does not enter an objection (at a time when the trial judge can correct the error), and the jury returns a statutorily responsive verdict to the offense charged, the reviewing court will uphold the verdict, even if the evidence presented is insufficient to prove the responsive offense, as long as the evidence is sufficient for a conviction of the offense charged. *See State ex rel. Elaire v. Blackburn*, 424 So.2d 246, 252 (La. 1982), *cert. denied*, 461 U.S. 959, 10 S.Ct. 2432, 77 L.Ed.2d 1318 (1983); *State v. Taylor*, 2014-0432, (La. 3/17/15)**,** 166 So.3d 988, 996. Likewise, when the evidence, viewed in a light most favorable to the State, does not support a conviction for the charged offense, but does support a conviction for a lesser included responsive offense, the reviewing court may render a judgment of conviction on the lesser included responsive offense, rather than granting an acquittal. La. C.Cr.P. art. 821(E); *State v. Harveston*, 389 So.2d 63, 64-65 (La. 1980). Therefore, defendant's conviction in this case will stand as long as the evidence is sufficient to support either the charged offense or the lessor-included responsive verdict returned by the jury.

Louisiana Revised Statutes 14:55 defines aggravated criminal damage to property as "the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion." A conviction for aggravated criminal damage to property

does not require a showing of specific intent; rather, the State must only show general intent, that is, that the defendant "voluntarily did the act." *State v. Bradstreet*, 16-80 (La. App. 5 Cir. 6/30/16), 196 So.3d 876, 887, *writ denied*, 16-1567 (La. 6/5/17), 220 So.3d 752 (citing *State v. Brumfield*, 329 So.2d 181, 190 (La. 1976)). Simple criminal damage to property is the intentional damaging of any property of another, without the consent of the owner, and except as provided in R.S. 14:55, by any means other than fire or explosion." La. R.S. 14:56. To support a conviction for simple criminal damage to property, the state must prove an intentional damaging of another's property. *State v. Barnes,* 496 So.2d 1056 (La. App. 4th Cir.1986). An essential element of the crime of simple criminal damage to property is that the damage was done without the consent of the owner. *State v. Shaw*, 37,168 (La. App. 2 Cir. 6/25/03), 850 So.2d 868, 875 (citing *State v. Perry*, 408 So.2d 1358 (La. 1982)).

In *State v. Shaw*, intentionally causing a vehicle collision constituted aggravated criminal damage to property when the danger to human life was apparent. 939 So.2d at 524; *See State v. Bates*, 37,282 (La. App. 2 Cir. 10/16/03), 859 So.2d 841, 849 *writ denied,* 04-0141 (La. 5/21/04), 874 So.2d 173. In *State v. Apodaca*, when the defendant fired a shotgun into the driver's sides of two occupied police units, the Louisiana Second Circuit found, "The endangerment of the lives of the officers was foreseeable, regardless of the low caliber of weapon used by Apodaca." 50,113 (La. App. 2 Cir. 9/30/15); 180 So.3d 465, 471–72.

In *State v. Dawson*, 18-257 (La. App. 1 Cir. 9/21/18), 2018 WL 4520104, the trial court granted defendant's motion for post-verdict judgment of acquittal, finding that the evidence was insufficient to support the conviction of aggravated criminal damage to property because there was a lack of evidence that it was foreseeable that human life might be endangered. In that case, the defendant admitted to officers that she chased the victim's car and ran into it. The victim

testified that the defendant's vehicle came at her head-on as she drove at a speed of about ten miles per hour in reverse. Then the victim slowed down or stopped and the defendant "slowed down just a bit before the contact," but the victim testified that it appeared that the defendant intentionally hit her. The trial court suggested that the victim stopped suddenly, and the defendant skidded into the victim's car after hitting her brakes, adding that it could almost be argued that it was negligence. *Id.* at *4. On appeal, however, the First Circuit could not say the jury's determination was irrational under the facts and circumstances presented to them. The court found that the trial court erred by substituting its appreciation of the evidence and credibility of witnesses for that of the trier of fact and overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. *Id.*

Likewise, in *State v. Williamson*, 09-1299 (La. App. 1 Cir. 12/23/09), 2009 WL 4981333, at *3, the First Circuit found that the evidence was sufficient to support a conviction of aggravated criminal damage to property because the "State had to prove only that it was foreseeable that human life *might* be endangered," and the jury could rationally conclude that the victim's life was endangered when the defendant intentionally rammed his truck into her driver's side, knowing that she was sitting in the driver's seat. (emphasis in original).

In the instant case, Mr. Collins testified that while driving a SWAT vehicle, he approached defendant's stopped vehicle from the rear. According to Mr. Collins, defendant put his vehicle in reverse, hit the gas, and impacted the vehicle driven by Mr. Collins. Mr. Collins testified that the impact caused his airbags to deploy and that due to the impact, the engine compartment of his vehicle caught on fire. Due to the fact that the fire department deemed it unsafe to put out the fire until ammunition in the vehicle "finished cooking off," the vehicle was completely burned and was a total loss. According to Mr. Collins and documentation

introduced into evidence, the value of the vehicle was estimated to be $20,950.

Ms. Lennix provided a contradictory account of the incident.  She testified that

defendant did not put his vehicle in reverse, and she maintained that the police

rammed into the back of defendant's parked vehicle.

In this matter, the jury accepted Mr. Collins's testimony and rejected the

testimony of Ms. Lennix.  The jury also found the State presented sufficient

evidence that defendant intentionally damaged the vehicle driven by Mr. Collins

and that it was foreseeable that human life might be endangered.  It is not this

Court's function to assess the witnesses' credibility or re-weigh the evidence. *See*

*State v. Contreras*, 17-0735 (La. App. 4 Cir. 5/30/18), 247 So.3d 858, 866, *writ*

*denied,* 18-1172 (La. 12/17/18), 259 So.3d 341 (If there is more than one

reasonable interpretation of the evidence, the rational view of all the evidence most

favorable to the prosecution must be adopted.);  *Taylor*, 166 So.3d at 993 (citing

*State v. Captville*, 448 So.2d 676, 680 (La. 1984)(In cases involving circumstantial

evidence, when "the jury reasonably rejects the hypothesis of innocence presented

by the defendant[ ], that hypothesis falls, and the defendant is  guilty unless there is

another hypothesis which raises a reasonable doubt.").

In light of the evidence that defendant reversed his vehicle into the unit

driven by Mr. Collins with enough force to deploy airbags and cause an engine

fire,[22] we find that any rational trier of fact could have found the defendant guilty

of aggravated criminal damage to property beyond a reasonable doubt.

Furthermore, we find the evidence was sufficient to support defendant's

conviction of the lesser included offense of simple criminal damage to property

where the damage amounted to $1,000 but less than $50,000, as there was no

evidence that JPSO consented to the damage, and the lack of consent is easily

---

[22] There was testimony of damage to the front end of Mr. Collins' vehicle separate and apart from the fire, and the damage in this case was caused "by means other than fire or explosives," namely, a car crash.

inferred from the circumstances of this case. *See State v. Perry,* 408 So.2d 1358, 1363 (La. 1982) ("lack of consent of an owner to malicious vandalism of an owner's property can often be inferred circumstantially from the evidence presented"); *See Taylor,* 166 So.3d at 996 (since the evidence was sufficient to support a verdict for the charged offense, the evidence was sufficient to support a verdict for the lesser-included offense).

As the record contains sufficient evidence to support defendant's convictions of possession with intent to distribute cocaine, possession of methamphetamine, and simple criminal damage to property where the damage amounted to $1,000 but less than $50,000, we now consider defendant's assignments of trial error. *See id.* (citing *State v. Hearold,* 603 So.2d 731, 734 (La.1992)).

***Assignment of Error Number One***

<u>The Trial Court Erred When it Denied Defendant's Motion for New Trial Because it Allowed Testimony That Under Louisiana Law Called for a Mistrial or Admonishment of The Jury, Yet the Trial Court Did Neither.</u>

Defendant alleges that the State's expert witness, Detective Wiebelt, gave an opinion on guilt or innocence of the accused in violation of Louisiana Code of Evidence art. 704, when Detective Wiebelt responded to questioning by the State, "that in his expert opinion, [defendant] was possessing the cocaine with the sole intent to distribute it." Defendant asserts that Code of Criminal Procedure art. 771 gives the trial court the options of either admonishing the jury or declaring a mistrial but contends that "[a]fter contemporaneous objection and request for mistrial, the trial court did neither." Defendant asserts that Detective Wiebelt's testimony was prejudicial to defendant and violated defendant's rights to a fair trial and to due process.

Louisiana Code of Evidence art. 704 provides that "... in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused." This prohibition applies even if the opinion is solicited through the

presentation of a hypothetical situation. *State v. Johnson*, 10-209 (La. App. 5 Cir. 10/12/10), 52 So.3d 110, 124 (citing *State v. Deal*, 00-434 (La. 11/28/01), 802 So.2d 1254, 1261, *cert. denied*, 537 U.S. 828, 123 S.Ct. 124, 154 L.Ed.2d 42 (2002)). When a witness makes an irrelevant remark that might prejudice the defendant, Code of Criminal Procedure art. 771 gives the trial court the option to either admonish the jury or, if an admonition does not appear to be sufficient, to declare a mistrial. *Id.* at 124 (citing *State v. Ducre*, 01-2778 (La. 9/13/02), 827 So.2d 1120 (per curiam)). Mistrial is a drastic remedy, which should be used only upon a clear showing of prejudice by the defendant; a mere possibility of prejudice is not sufficient. *Id.* A trial judge has broad discretion in determining whether conduct is so prejudicial as to deprive an accused of a fair trial. *Id.*

The State contends that defendant's general objection at trial was insufficient to preserve this issue on appeal because he failed to provide grounds for the objection. Defendant acknowledges that the grounds for defense counsel's objection and motion for mistrial were "not clear from the transcript due to the objection discussion being held at the bench," but he asserts that it is clear from the defense's motion for new trial and the court minutes. During trial, when Detective Wiebelt offered his opinion that defendant was possessing cocaine with the sole intent to distribute it, defense counsel stated, "Objection, Your Honor. May we approach?" A bench conference was held off the record, and when the trial court went back on record, the State immediately tendered the witness. The discussion regarding the grounds for the objection was not placed on the record; the trial minutes simply indicate that the bench conference was held "pursuant to expert witness making a statement of the case." However, the minute entry reflects that defense counsel moved for a mistrial, which was denied.

Louisiana Code of Criminal Procedure art. 841(A) provides that an error cannot be availed of after a verdict unless it was objected to at the time of the

occurrence.  In order to seek appellate review of an alleged trial error, a party must make a contemporaneous objection at trial, and he must state the grounds for the objection.  La. C.Cr.P. art. 841;  *see also State v. Harris*, 17-303 (La. App. 5 Cir. 12/20/17), 235 So.3d 1354, 1372, *writ denied*, 18-160 (La. 6/15/18), 257 So.3d 675 (citing *State v. Brooks*, 12-226 (La. App. 5 Cir. 10/30/12, 103 So.3d 608, 613-14, *writ denied*, 12-2478 (La. 4/19/13), 111 So.3d 1030).  A defendant is limited on appeal to matters to which an objection was made but also to the grounds for his objection articulated at trial.  *State v. McGowan*, 16-130 (La. App. 5 Cir. 8/10/16), 199 So.3d 1156, 1161 (citing *State v. Jackson*, 450 So.2d 621 (La. 1984);  *State v. Baker*, 582 So.2d 1320 (La. App. 4th Cir. 1991), *writ denied*, 590 So.2d 1197 (La. 1992), *cert. denied*, 506 U.S. 818, 113 S.Ct. 62, 121 L.Ed.2d 30 (1992)).  An objection made after the evidence is before the jury is too late.  *State v. Snyder*, 12-896 (La. App. 5 Cir. 10/9/13), 128 So.3d 370, 376, *writ denied*, 13-2647 (La. 4/25/14), 138 So.3d 643.  The contemporaneous objection rule is also applied to motions for mistrials.  *Id.*  (citing *State v. Smith*, 11-638 (La. App. 5 Cir. 3/13/12), 90 So.3d 1114, 1123).

The lack of recording of arguments heard at the bench, alone, is not error.[23] Rather, it is the court's ability to review and the demonstration of prejudice that are at issue. *State v. Vincent*, 07-239 (La. App. 5 Cir. 12/27/07), 978 So.2d 967, 974. In *State v. Bennett*, 591 So.2d 783 (La. App. 4th Cir. 1991), the defendant argued that the trial court erred in denying his motion for mistrial, which was made when the State referred to the defendant's post-arrest silence.  The record indicated that defense counsel asked to approach the bench, and a bench conference was held. Cross-examination of the defendant resumed without reference to what transpired

---

[23] Neither Code of Criminal Procedure art. 843 nor Article I, §19 of the Louisiana Constitution requires recordation of bench conferences, and the Louisiana Supreme Court has not articulated such rule. *State v. Vincent*, 07-239 (La. App. 5 Cir. 12/27/07), 978 So.2d 967, 974.

during the bench conference, and no further questions were posed regarding the defendant's post-arrest silence. The minute entry stated that "out of the presence of the jury, all objections as noted by defense." *Id*. at 786. The Fourth Circuit Court held that because the record did not include a motion for mistrial, a request for admonishment, or a specific objection to the question regarding the defendant's post-arrest silence, the defendant waived his right to raise the issue on appeal. *Id*. at 787-88.

The *Bennett* court relied in part on *State v. Grant*, 531 So.2d 1121 (La. App. 4th Cir. 1988), *writ denied*, 567 So.2d 1117 (La. 1990). In that case, the defense objected to a question by the prosecutor and a motion was made inside the judge's chambers. Upon returning from her chambers, the trial judge admonished the jury to disregard the last question. There was no indication that the defense requested and was denied a mistrial. The Fourth Circuit stated, "When a defendant objects to improper remarks and the objection is overruled, the defendant is not required to move for an admonition or a mistrial to preserve his rights on appeal." *Id*. at 1123 (citing *State v. Baylis,* 388 So.2d 713 (La.1980)). However, "When a defendant's objection is sustained . . . there is no reason defendant should not be required to request an admonition or mistrial, if he wants one." *Id*. The court found that the defendant could not complain of any alleged error on appeal where the record was "deficient in revealing the grounds for objection, whether any request for relief was made, and the court's ruling concerning defense counsel's objection." *Id*. The court further stated that the appellate record apparently showed that the trial court sustained the defense's objection and granted his request for admonition. *Id*.

Unlike the record in either *Grant* or *Bennett,* the minute entry in this case, stating that the topic of the bench conference following defendant's objection was the "expert witness making a statement of the case" provides some insight into the basis of the objection. Further, although the motion for mistrial was apparently

made at the bench as well, the fact that it was made and denied is recorded in the minutes. Nevertheless, even assuming that defendant properly preserved the issue for appeal, we find that defendant is not entitled to relief.

In *Johnson*, this Court found that the prosecutor's hypothetical, tracking the specific facts of the case, caused the expert witness to come "too close to commenting on the ultimate issue of guilt," in violation of Code of Evidence art. 704. 52 So.3d at 125. In the instant case, Detective Wiebelt offered a direct opinion on the ultimate issue of defendant's guilt by stating, "My expert opinion, based on all of the facts and circumstances in this case, is that Mr. Lane was possessing the cocaine with the sole intent to distribute it." The fact that the expert did not specifically use the word "guilty" or "innocent" does not prevent the finding that the opinion usurped the jury's function as the ultimate fact finder.

However, the finding of error does not terminate the discussion. Admonishment or mistrial are the appropriate remedies for irrelevant remarks such as these that may prejudice the defendant. *Id.* Defendant assigns error to the fact that the trial court failed to issue an admonition to the jury and also failed to grant defense's motion for mistrial. However, the record does not reflect that an admonition was requested, as required by Code of Criminal Procedure art. 771. The trial judge's failure to admonish the jury to disregard a prejudicial comment, absent a request, was not, in itself, reversible error. *See State v. Tribbet*, 415 So.2d 182, 185 (La. 1982).

The defendant did move for a mistrial and was denied. The Louisiana Supreme Court has held that error resulting from the improper admission of an expert's opinion concerning the ultimate issue of a defendant's guilt is subject to a harmless error analysis. *See State v. Code*, 627 So.2d 1373, 1384 (La. 1993), *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994). The proper analysis for determining harmless error is "not whether, in a trial that occurred

without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Johnson*, 52 So.3d at 125 n.7.

In *Johnson*, despite the finding that the expert came too close to opining on the ultimate issue of guilt, this Court found that the trial court did not abuse its discretion in refusing to grant a mistrial because it was unclear how the expert witness's testimony prejudiced the defendant. This Court considered the fact that prior to deliberations, the trial judge instructed the jury on the law regarding expert witnesses and the jurors' role as the "sole judges of the law and the facts on the question of guilt or innocence." This Court indicated that the trial judge's instructions were sufficient to counteract any influence caused by the officer's testimony. *Id*. at 125, 127. Further, despite the officer's testimony, this Court found that the corroborated tip, the amount of cocaine found on the defendant and at his home, and the manner in which it was packaged provided substantial evidence of the defendant's guilt. Thus, this Court concluded that the officer's comments were not so prejudicial as to warrant a mistrial. *Id.* at 27. *See also State v. Gross*, 14-110 (La. App. 5 Cir. 6/24/14), 145 So.3d 521, *writ denied*, 14-1516 (La. 2/27/15), 159 So.3d 1065).

Despite Detective Wiebelt's testimony that defendant possessed the cocaine with the sole intent to distribute it, the State provided substantial evidence of defendant's guilt. According to the testimony of State's witnesses, a CI provided information that defendant was distributing narcotics and that defendant would arrive at a Super 8 Motel in a dark-colored Tahoe at approximately 1:00 a.m. on April 12, 2018, to deliver seven grams of cocaine. Defendant arrived at the motel at the expected time and in the described vehicle whereupon officers attempted an investigatory stop, causing defendant to flee the scene, leading officers on a high-speed pursuit. Although cocaine was not found on defendant's person or located in

his vehicle at the time of his arrest, twenty-eight grams of crack cocaine, along with razor blades and plastic bags, were seized from within defendant's residence pursuant to a search warrant. Mr. Collins and Detective Wiebelt provided testimony that razor blades and plastic bags are drug paraphernalia commonly associated with drug distribution as opposed to merely possession. The State also presented Detective Wiebelt's expert testimony regarding the increments in which crack cocaine is broken down for sale, the sale value per one-tenth of a gram, and the profit margin on twenty-eight grams of crack cocaine. Prior to opining on the ultimate issue, Detective Wiebelt had testified, without objection from defense counsel, that "the weight alone in this case, I believe is possession with the intent do [sic] distribute and solely possession with intent to distribute." Finally, the State presented evidence that defendant had previously pled guilty to possession with intent to distribute cocaine and possession with intent to distribute marijuana. *See Hearold,* 603 So.2d at 736 (La. 1992) (The combination of prior drug distribution and the amount of drugs found in the bag can be sufficient to convict a defendant of possession with intent to distribute.).

Based on the foregoing evidence provided by the State, we find that the trial court did not err in denying defendant's motion for mistrial, as any error in admitting Detective Wiebelt's testimony relative to the issue of guilt was harmless.

### *Assignment of Error Number Two*

<u>The Trial Court Violated Appellant's Constitutional Rights and Due Process Rights by Allowing the Admission of Inadmissible and Prejudicial Evidence.</u>

Defendant's final assignment of error consists of two parts. First, Defendant alleges that the trial court erred in admitting 404(B) evidence of his prior conviction for possession with intent to distribute cocaine, arguing that the remoteness in time of the conviction, over 16 years ago, rendered its probative value extremely limited and that the probative value was substantially outweighed

by the danger of unfair prejudice. Defendant suggests the use of this evidence allowed the State to effectively lower the burden of proof on count one.

At trial, defendant failed to properly preserve this issue for appeal. A defendant is limited to matters on appeal to which an objection was made and also to the grounds articulated at trial. *McGowan*, 199 So.3d at 1161. When a defendant unsuccessfully seeks to exclude certain evidence at a pre-trial motion, but at trial agrees to its introduction, he waives his prior objection and loses the right to present the issue on appeal. *State v. Patin*, 13-618 (La. App. 5 Cir. 9/24/14), 150 So.3d 435, 443, *writ denied*, 14-2227 (La. 4/22/16), 191 So.3d 1043 (citing *State v. Gaal*, 01-376 (La. App. 5 Cir. 10/17/01), 800 So.2d 938, 951, *writ denied*, 02-2335 (La. 10/3/03), 855 So.2d 294).

In *Patin*, this Court found that the defendant waived the issue of "other crimes evidence," and did not preserve it for appeal, when the defendant objected to the pre-trial ruling granting the State's motion to admit 404(B) evidence but failed to object at trial to the witnesses' testimony, cross-examined the witness regarding the facts and circumstances of the other crimes, and responded "no objection" to the majority of the evidence admitted and published to the jury regarding the other crimes. *Id.*

Likewise, in this case, the defendant unsuccessfully sought to exclude evidence of a prior act through a pre-trial motion, and lodged no objection to Lieutenant Renton testifying at trial. During cross-examination, the defense asked Lieutenant Renton questions regarding his involvement with the CI during the 2002 investigation, whether he was present during surveillance of the CI's purchase in that investigation, and whether he was able to corroborate the information submitted to get the search warrant. Furthermore, when the trial court asked defense counsel whether he had any objection to the State's introduction of defendant's *Boykin* and minute entry from his prior guilty pleas to possession with

intent to distribute cocaine and possession with intent to distribute marijuana, defense counsel stated, "No objection, Your Honor." Defense counsel also voiced no objection when the State sought to publish the exhibit to the jury. As in *Patin*, the defense consented to the admission of evidence of defendant's prior convictions.

Defendant's next argument regarding inadmissible evidence related to the evidence collected incident to the search of defendant's home. Defendant acknowledges that this Court previously considered the admissibility of this evidence via supervisory writ, *State v. Lane*, 18-733 (La. App. 5 Cir. 1/22/19) (unpublished writ disposition), but suggests that additional facts came to light at trial, which should alter our previous opinion. Specifically, defendant asserts that Detective Jones testified at trial that NIK testing of the white powder substance found during his search of defendant yielded a positive result for cocaine; however, the State's crime lab witness testified that the substance was not cocaine. Defendant contends that, absent this substance, the search warrant contained inaccurate information, the police lacked authority to search the house, and all evidence seized from that search should have been inadmissible as fruit of the poisonous tree.

Defendant also requests that this Court reconsider his previously lodged arguments in light of this new information. Defendant argued that the search of the house took place before officers obtained the warrant, and therefore, all evidence seized during the search was inadmissible. In support of his argument, Defendant pointed to the crime scene photographs of the inside of the house, which were preceded by a placard with a hand-written time stamp of 1:09 a.m., over an hour before the warrant was signed by a judge at 2:34 a.m. Further, he pointed out that the police made a return on the warrant at 2:35 a.m., suggesting that for the officers

to have found the narcotics within one minute of being authorized to search, they must have known exactly where to look.

On October 11, 2018, after hearing testimony and arguments from counsel, the trial court denied the motion to suppress evidence without providing reasons. On January 22, 2019, this Court denied defendant's writ application and found the trial court did not abuse its discretion in denying defendant's motion to suppress evidence. This Court determined that it appeared that the trial court accepted Mr. Collins's testimony that officers did not conduct the search or seize evidence until after the warrant was authorized. To the extent defendant challenged the officers' entry into the residence before they obtained the search warrant to perform a protective sweep, the disposition noted that this Court and the Louisiana Supreme Court have held that officers may temporarily secure a dwelling to prevent the removal or destruction of evidence to preserve the status quo while obtaining a search warrant. *State v. Lane*, 18-733 (La. App. 5 Cir. 1/22/19 (unpublished writ disposition).

An appellate court will generally refuse to reconsider its own rulings of law on a subsequent appeal in the same case. *State v. Falcon*, 13-849 (La. App. 5 Cir. 3/12/14), 138 So.3d 79, 87-88, *writ denied*, 14-769 (La. 11/14/14), 152 So.3d 877 (citing *State v. Pettus*, 11-862 (La. App. 5 Cir. 5/22/12), 96 So.3d 1240). The law of the case doctrine is discretionary. Reconsideration of a prior ruling is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. *Id.* Defendant's arguments on appeal are similar to those set forth in his prior writ application, and defendant's brief does not allege any new facts or additional jurisprudence that would suggest that this Court's previous determination was patently erroneous or created an unjust result. *See State v. Massey*, 11-358 (La. App. 5 Cir. 3/27/12), 97 So.3d 13, 15, *writ denied*, 12-993 (La. 9/21/12), 98 So.3d 332 where this Court applied the

law of the case doctrine to its previous ruling finding that the trial court correctly denied the defendant's motion to suppress where the defendant failed to cite any new facts adduced at trial or additional jurisprudence.

In asserting that additional facts came to light at trial, Defendant specifically refers to the facts that Detective Jones testified that the white powder located when he searched defendant, which yielded a positive result for cocaine with a NIK test, was also tested by the State's crime lab and did not contain any controlled dangerous substances. Although the testimony regarding the false positive NIK test and the crime lab results was first elicited at trial, the suppression hearing transcript shows that defense counsel was aware of the crime lab results at the time of the suppression hearing and argued this fact in support of the motion to suppress stating, "We also have another issue where the suspected cocaine that was allegedly found on my client tested negative by the Crime Lab, which means he had BC Powder at best. He had no drugs on him."[24]

Since no new evidence or jurisprudence was presented that would alter this Court's previous determination, the law of the case doctrine is applicable and we decline to revisit the suppression issue on appeal.

**ERROR PATENT DISCUSSION**

The record was reviewed for errors patent, according to Louisiana Code of Criminal Procedire art. 920, *State v. Oliveaux*, 312 So.2d 337 (La. 1975), and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990). We find no errors that require corrective action.

---

[24] The same transcript was available to this Court attached to the previous writ application. *See* Uniform Rules, Court of Appeal – Rule 2-1.14 which states, "[a]ny record lodged in this court may, with leave of court, be used without necessity of duplication, in any other case on appeal or on writ."

## <u>DECREE</u>

For the aforementioned reasons, we find that the evidence was sufficient to support Defendant's convictions on all counts.  Finding that all other errors were either unpreserved or harmless, we affirm Defendant's convictions and sentences.

<u>**AFFIRMED**</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 23, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-KA-137

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. LEE V. FAULKNER, JR. (DISTRICT JUDGE)
ANNE M. WALLIS (APPELLEE)        THOMAS J. BUTLER (APPELLEE)        DAVID F. GREMILLION (APPELLANT)

### MAILED
RAVI G. SHAH (APPELLANT)
ATTORNEY AT LAW
510 NORTH JEFFERSOON AVENUE
COVINGTON, LA 70433

HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
BRITTANY BECKNER (APPELLEE)
TUCKER H. WIMBERLY (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053