SUSAN M. CHEHARDY, Judge.
 

 |2On July 6, 2006, the Jefferson Parish District Attorney filed a bill of information charging defendant, Jerry Babineaux, Jr., with manslaughter, a violation of La. R.S. 14:31. The next day, defendant pled not guilty at his arraignment. After a hearing, the trial judge denied defendant’s pretrial motions, including his motion to suppress statements.
 

 On March 2, 2007, after a three-day trial, the twelve-person jury found defendant guilty of negligent homicide, a responsive verdict to manslaughter. On
 
 *623
 
 April 17, 2007, the trial court sentenced defendant to imprisonment at hard labor for five years.
 

 That same day, the State filed a multiple bill alleging defendant was a fourth felony offender, and defendant stipulated to his identity but denied the remaining allegations of the bill. After a hearing, the trial court found that defendant was a fourth felony offender. On April 28, 2007, the trial court vacated the original sentence and, pursuant to La. R.S. 15:529.1, imposed an enhanced sentence of 20 years at hard labor, to run concurrently with any other sentence he was currently serving.
 

 |3On April 10, 2008, defendant filed an untimely motion to reconsider sentence under
 
 State v. Dorthey,
 
 623 So.2d 1276 (La. 1993). On May 1, 2008, the trial court heard and denied that motion. On May 2, 2008, defendant filed a motion for appeal that was granted.
 

 Initially, we must address the question of timeliness. La.C.Cr.P. art. 914 provides:
 

 A. A motion for an appeal may be made orally in open court or by filing a written motion with the clerk. The motion shall be entered in the minutes of the court.
 

 B. The motion for an appeal must be made no later than:
 

 (1) Thirty days after the rendition of the judgment or ruling from which the appeal is taken.
 

 (2) Thirty days from the ruling on a motion to reconsider sentence filed pursuant to Article 881.1, should such a motion be filed.
 

 La.C.Cr.P. art. 881.1 provides that a defendant may make or file a motion to reconsider sentence within 30 days following the imposition of sentence or within such longer period as the trial court may set at sentence.
 

 In
 
 State v. Jupiter,
 
 05-869 (La.App. 5 Cir. 2/3/06), 922 So.2d 1245, this Court found that defendant’s motions to reconsider sentence and appeal were untimely. Further, even though the trial court had granted an appeal, this Court dismissed the appeal and remanded it to the district court to allow defendant the opportunity to seek reinstatement of his appeal rights by application for post-conviction relief.
 
 Id.,
 
 922 So.2d at 1247.
 

 However, in two recent Louisiana Supreme Court cases,
 
 State v. S.J.I.,
 
 06-2649 (La.6/22/07), 959 So.2d 483 and
 
 State v. Shay,
 
 07-0624 (La.10/26/07), 966 So.2d 562, the supreme court vacated similar judgments of the courts of appeal. In both, the supreme court remanded the case to the court of appeal to address the 14merits of relators’ assignments of error. The supreme court noted that the trial courts had granted relators’
 
 pro se
 
 motions for appeal and appointed appellate counsel and the State had not complained of any procedural irregularities in the out-of-time appeal. Dismissing the appeal and remanding to the district court, the court reasoned, would only prolong the delay, without serving any useful purpose.
 

 Because the procedural history and facts in our case are the same as the history and facts in
 
 S.J.I.
 
 and
 
 Shay,
 
 we will address the merits of defendant’s assignments of error to avoid further useless delay.
 

 Facts
 

 On the night of April 30, 2006, Jerry Babineaux, who is also known as “Jay,” made a telephone call to arrange to purchase illegal narcotics. After he ended the call, Babineaux and his friend, Darryl Reid, also known as “Rebow,” left the house on bicycles. Several hours later, Babineaux and Reid went to play pool at the Mona Lisa Lounge on Laroussini
 
 *624
 
 Street in Westwego. However, when they arrived, the lounge was closed.
 

 At that point, Babineaux asked Reid to repay money Reid had previously borrowed from Babineaux, but Reid refused. Reid kicked and damaged the bicycle that Babineaux had been riding. When Babi-neaux tried to grab Reid’s arm, Reid attempted to punch Babineaux. A fist fight ensued. Babineaux admitted hitting Reid in the face at least two or three times during the altercation. As the physical altercation escalated, Reid pulled out a knife
 
 [1]
 
 and chased Babineaux around a truck parked in the Mona Lisa’s parking lot.
 

 Babineaux grabbed a wooden board from the bed of the truck and told Reid, “Stop. Leave it alone. I had enough.” Reid, however, continued coming at |sBabineaux with the knife. When Babi-neaux swung the board in an attempt to knock the knife out of Reid’s hand, he struck Reid in the side with the board.
 

 After Babineaux struck Reid in the side, Reid said, “All right, Jay. All right ...” and began walking down 10th Street towards Avenue C. Babineaux started to follow, about a block behind Reid. As they walked, Babineaux asked Reid again for money to buy beer and cigarettes, but Reid again put him off until the next day. Wfiiile they were walking, Reid fell down in the middle of the street and did not move. When Babineaux approached Reid, Reid stated that he was fine and cursed at defendant. Babineaux, who was still carrying the wooden board, started home.
 

 On his way home, Babineaux saw Robert Dominique in front of his house at Avenue D and 10th Street. Babineaux threw the board down behind Dominique’s house and went home. When Babineaux arrived at her apartment, he told his live-in girlfriend, Shantelle Blanda, that he was going to jail that night because he had “knocked the f*ck out of [Reid].”
 

 Blanda decided to check on Reid herself. Blanda stated that she needed a beer before she checked on Reid so, on the way to check on Reid, she and Babineaux walked to the Shell station near her apartment. According to Blanda, while they were walking, Babineaux admitted that he hit Reid with the board because he did not get a share of “crack cocaine” from Reid’s transaction.
 

 In the meantime, at approximately 12:30 to 12:45 a.m., William Bellanger reported a man lying semi-conscious on the ground near the corner of 10th Street and Avenue C. He told the 911 operator that he had seen another man walk away from the scene while holding something in his hand like a stick or a bat. At approximately 12:40 to 1:00 a.m., Officer Kelly Carrigan arrived and found Reid lying flat on his back in the street near the corner of 10th Street and Avenue C.
 

 |i[When Officer Carrigan approached Reid, he heard a gurgling sound coming from Reid’s mouth and observed that Reid was bleeding from his ears, eyes, and nose. Officer Carrigan also observed that Reid was grasping a knife in his right hand, which Officer Carrigan removed for his safety. As Reid was lying there, he told a second policeman, Officer Terry Braun, that he was having trouble breathing. Reid was immediately transported by ambulance to a trauma center; unfortunately, despite the medical team’s best efforts, Reid died.
 

 
 *625
 
 At approximately 1:00 a.m., Officer Bruce Chauvet obtained a description of the suspect and started searching the neighborhood. Approximately 40 minutes later, Officer Chauvet observed a couple in the vicinity of the incident. The man, later identified as Babineaux, matched the suspect’s description and the white female was later identified as Shantelle Blanda. After speaking with them, Officer Chauvet detained them regarding the incident in question.
 

 After Babineaux was advised of his constitutional rights, he made statements to Officer Chauvet and Officer Carrigan. In essence, defendant stated, “Yeah, what do you want to know? I f* eking hit him with a piece of wood cause[sic] he stumped[sic] on my bike by the Mona Lisa and I was trying to kill him, that f*cking b*tch and I’ll do it again, too. F*ck him, mother f*cker.” The officers then transported defendant to the Westwego Police Headquarters, where he was advised of his constitutional rights in writing.
 

 At headquarters, defendant declined further interview with the detective on the basis that he had already spoken to the police and that his actions were self-defense. That night, Detective Barteet did not observe any visible injuries to defendant.
 

 The next day, which was May 2, 2006, defendant changed his mind and gave a statement to Detective Barteet. In that statement, defendant admitted that |7he and Reid were in a physical altercation and that he struck Reid in the side with a board after Reid revealed a knife.
 

 Dr. Susan Garcia, an expert forensic pathologist, performed the autopsy on Reid. Dr. Garcia testified that the cause of death was blunt force trauma to Reid’s side, which damaged his spleen, causing exsanguination. The blow to Reid’s spleen was fatal because, as a result of advanced cirrhosis of the liver, Reid’s blood did not coagulate properly. Based on the testimony and evidence, the jury found defendant guilty of the responsive verdict of negligent homicide.
 

 In his first assignment of error, defendant argues that the evidence did not support the verdict because the State did not adequately refute his claim that the killing was in self-defense. Defendant specifically contends that he struck the blow, which turned out to be fatal, to disarm the victim. The State responds that the evidence contradicts self-defense because the evidence reflects that defendant attacked the victim because the victim had damaged his borrowed bicycle and refused to give defendant the money he owed him.
 

 In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Neal,
 
 00-0674 (La.6/29/01), 796 So.2d 649, 657,
 
 cert. denied,
 
 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). In cases involving circumstantial evidence, the trial court must instruct the jury that, “ ‘assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.’ ” La. R.S. 15:438.
 

 l8The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have
 
 *626
 
 found proof of guilt beyond a reasonable doubt.
 
 State v. Mitchell,
 
 99-3342 (La.10/17/00), 772 So.2d 78, 83;
 
 State v. Washington,
 
 03-1135 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977.
 

 In this case, defendant was charged with manslaughter but convicted of the responsive verdict of negligent homicide. La. C.Cr.P. art. 814(A)(5). La. R.S. 14:32(A) provides that negligent homicide is the killing of a human being by criminal negligence. La. R.S. 14:12 provides that criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances. According to La. R.S. 14:20, a homicide is justifiable “[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.”
 

 When a defendant claims self-defense in a homicide case, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense.
 
 State v. Cassard,
 
 01-931, p. 8 (La.App. 5 Cir. 2/26/02), 811 So.2d 1071, 1076,
 
 writ denied,
 
 02-0917 (La.12/19/02), 833 So.2d 327. The relevant inquiry on appeal is whether a rational fact finder, after viewing the evidence in the light most favorable to the prosecution, could have found, beyond a reasonable doubt, that the homicide was not committed in self-defense.
 
 Id.
 

 | nThe determination of a defendant’s culpability focuses on a two-fold inquiry: (1) from the facts presented, could the defendant reasonably have believed his life to be in imminent danger; and (2) was deadly force necessary to prevent the danger.
 
 State v. T.N.,
 
 94-669 (La.App. 5 Cir. 1/18/95), 650 So.2d 288, 289. While there is no unqualified duty to retreat from an altercation, the possibility of escape is a recognized factor in determining whether or not a defendant had a reasonable belief that deadly force was necessary to avoid the danger.
 
 Id.
 
 at 290.
 

 Here, defendant does not argue that the State failed to prove the elements of negligent homicide, but rather that the State failed to prove that defendant did not act in self-defense. First, the record reveals several different reasons that defendant confronted Reid, including Reid’s refusal to repay money that he owed defendant, Reid’s refusal to share drugs with defendant, and Reid’s damaging of defendant’s borrowed bicycle. Second, defendant had no visible injuries after the fight, compared to Reid who was left lying on the ground, with multiple injuries to his face and torso, unable to breathe and bleeding from his eyes, ears, and nose. Third, defendant was significantly taller than Reid, according to the police report of the incident. Finally, defendant not only did not attempt to retreat from the altercation at the Mona Lisa, but also followed the victim, who did retreat from the fight, for several blocks while still armed with the board.
 
 [2]
 
 Upon review, we find that the record supports the finding that defendant struck Reid for reasons other than self-defense.
 

 
 *627
 
 Furthermore, we note that, after listening to the testimony and considering the other evidence, the jury clearly did not find that defendant committed the homicide in self-defense. The credibility of a witness is within the sound Indiscretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of witnesses will not be reweighed on appeal.
 
 State v. Macon,
 
 06-0481 (La.6/1/07), 957 So.2d 1280, 1285-86;
 
 State v. Rowan,
 
 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
 

 Based on the foregoing, we find that a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the homicide was not committed in self-defense. This assignment of error lacks merit.
 

 In his second assignment of error, defendant argues that the trial court imposed an excessive sentence. We preter-mit discussion of this assignment, however, in light of the fact that we must vacate defendant’s multiple offender adjudication and enhanced sentence.
 

 Upon error patent review in accordance with La.C.Cr.P. art. 920, we find that the trial judge did not sufficiently advise defendant of his statutory multiple offender rights. Pursuant to La. R.S. 15:529.1, the trial court shall inform defendant of the allegations contained in the information and of his right to be tried as to the truth thereof according to law, and shall require the offender to say whether the allegations are true.
 
 State v. Morgan,
 
 06-529, p. 22 (La.App. 5 Cir. 12/12/06), 948 So.2d 199, 213.
 

 Our jurisprudence holds that La. R.S. 15:529.1 implicitly requires that the trial court advise defendant of his right to remain silent.
 
 Id.
 
 Generally, a trial court’s failure to advise the defendant of his right to a hearing and his right to remain silent is considered harmless error when the defendant’s multiple offender status is established by competent evidence offered by the State at a hearing rather than by admission of the defendant.
 
 State v. Knight,
 
 01-881 (La.App. 5 Cir. 2/13/02), 811 So.2d 947, 949.
 

 1 nIn the instant case, defense counsel stipulated that defendant was the same person who pleaded guilty to the three predicate offenses. The trial court then heard defendant’s objections to the multiple offender bill and found defendant to be a fourth felony offender. The record does not reflect that the trial court advised the defendant of his right to a formal hearing, to have the State prove its case under the multiple offender statute, or of his right to remain silent.
 

 In
 
 State v. Bourgeois,
 
 08-211 (La.App. 5 Cir. 10/28/08), 998 So.2d 165, this Court reversed defendant’s multiple offender adjudication and vacated his enhanced sentence because defendant was not informed of his rights pursuant to La. R.S. 15:529.1, and the State did not establish proof of the prior convictions by competent evidence.
 
 [3]
 
 In accord with the prevailing jurisprudence, we must reverse defendant’s multiple offender adjudication. We note that defendant is not protected by principles of
 
 *628
 
 double jeopardy from being tried again on the question of the prior felony convictions.
 
 State v. Johnson,
 
 432 So.2d 815, 817 (La.1988);
 
 State v. Hill,
 
 340 So.2d 309 (La.1976);
 
 State v. Schnyder,
 
 06-29 (La. App. 5 Cir. 6/28/06), 937 So.2d 396, 403.
 

 Based on the foregoing, we reverse defendant’s multiple offender adjudication, vacate his enhanced sentence, and remand to the trial court for proceedings consistent with this opinion. In all other respects, defendant’s underlying conviction and sentence are affirmed.
 

 AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; REMANDED.
 

 [1]
 

 . Throughout the investigation and trial, the object that Reid carried was referred to as a "razor knife,” a "utility knife,” and a "box cutter.” For consistency, we refer to the object in Reid's hand as a knife.
 

 [2]
 

 .
 
 See State v. Pagan,
 
 04-1478 (La.App. 5 Cir. 5/31/05), 905 So.2d 435, 443,
 
 writ denied,
 
 05-2003 (La.2/1/06), 924 So.2d 1013 (prosecution met its burden of proving the homicide was not committed in self-defense where, even though defendant had more significant injuries than the victim, defendant was taller, heavier, and younger than the victim and did not attempt to retreat from the altercation.
 

 [3]
 

 . In
 
 Bourgeois,
 
 defense counsel stipulated that defendant was the same person who pleaded guilty to the three predicate offenses. After-wards, a hearing was held on defense counsel’s objections to the multiple bill. The trial court took the matter under advisement and later found defendant to be a fourth felony offender. The record did not reflect that the trial court advised the defendant of his right to a formal hearing, to have the State prove its case under the multiple offender statute, or of his right to remain silent. 998 So.2d at 167.