STATE OF LOUISIANA

VERSUS

LIOVEL GRANADO-GONZALEZ

NO. 23-KA-387

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 21-2690, DIVISION "F"
HONORABLE MICHAEL P. MENTZ, JUDGE PRESIDING

July 03, 2024

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Stephen J. Windhorst

**CONVICTION AFFIRMED;**
**SENTENCE VACATED; REMANDED**
    **SJW**
    **SMC**
    **JGG**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Thomas J. Butler
     Andrea F. Long
     Laura S. Schneidau
     Leo M. Aaron

COUNSEL FOR DEFENDANT/APPELLANT,
LIOVEL GRANADO-GONZALEZ
     Gwendolyn K. Brown

DEFENDANT/APPELLANT,
LIOVEL GRANADO-GONZALEZ
     In Proper Person

**WINDHORST, J.**

Appellant/defendant, Liovel Granado-Gonzalez, appeals his conviction and sentence for third degree rape. For the reasons that follow, we affirm defendant's conviction. However, due to an error patent, we vacate defendant's sentence and remand for resentencing.

**PROCEDURAL HISTORY**

On July 7, 2021, the Jefferson Parish District Attorney's Office filed a bill of information charging defendant, Liovel Granado-Gonzalez, with one count of second degree rape, in violation of La. R.S. 14:42.1. Defendant was arraigned and pled not guilty.

On February 14, 2023, a twelve-person jury found defendant guilty of the lesser-included offense of third degree rape, in violation of La. R.S. 14:43.[1] On March 15, 2023, the trial court denied defendant's motions for post-verdict judgment of acquittal and new trial. Immediately thereafter, the victim's impact statement was read into the record and the trial court sentenced defendant to eighteen years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. This appeal followed.[2]

**EVIDENCE**

The victim, M.C.,[3] testified she has been married to her husband for eighteen years and they previously lived at 632 Sessions Lane in Kenner. M.C. stated that her husband's half-brother, defendant Liovel Granado-Gonzalez, stayed in the shed

---

[1] An interpreter was present throughout trial.

[2] The trial court denied defendant's motion for reconsideration of sentence and granted his motion for appeal. In the interest of justice, this court will address the merits of defendant's appeal even though defendant's motion to reconsider sentence, which was denied, and his motion for appeal were untimely. See State v. Jones, 15-157 (La. App. 5 Cir. 09/23/15), 176 So.3d 713, 716; State v. Fair, 15-434 (La. App. 5 Cir. 12/23/15), 182 So.3d 1238, 1240 n.1, writ denied, 16-185 (La. 02/03/17), 215 So.3d 688; State v. Lane, 20-137 (La. App. 5 Cir. 12/23/20), 309 So.3d 886, 894, writ denied, 21-100 (La. 04/27/21), 314 So.3d 836; State v. Babineaux, 08-705 (La. App. 5 Cir. 01/13/09), 8 So.3d 621, 623, citing State v. S.J.I., 06-2649 (La. 06/22/07), 959 So.2d 486; State v. Shay, 07-624 (La. 10/26/07), 966 So.2d 562. Further, La. C.Cr.P. art. 930.8 provides that an application for post-conviction relief, including a request for out-of-time appeal, must be filed within two years from the date a defendant's conviction and sentence become final. Defendant's motion for appeal was timely filed under La. C.Cr.P. art. 930.8.

[3] In accordance with La. R.S. 46:1844(W)(3), this court uses only the victim's initials in this opinion.

in the backyard.[4] M.C. testified she and defendant were not friends and did not have any "real conversations." M.C. greeted defendant only when her husband was home and when defendant used the shower or bathroom in the house.

M.C. testified that her family came to her house for a cookout for Mother's Day on May 9, 2021, and she had four to six beers over the entire day. She stated defendant did not participate in the celebration and mainly stayed inside the shed. After everyone left, she went inside with her husband and went to bed.

Early the next morning on May 10, 2021, after her husband left for work, M.C. testified she woke up to defendant banging on her window and calling her name. M.C. stated she eventually "cracked open" the back door and told defendant she was sleeping. As she was closing the door, defendant pushed the door open and entered the house.

M.C. testified she was alarmed and nervous because defendant had not previously tried to enter the house. She walked to her bedroom to get her cell phone to call the police because she knew something was not right. As she reached for her cell phone, defendant came behind her, grabbed her arm, turned her around, and pushed her to the floor. M.C. testified she struggled and fought with defendant while she was on the floor while defendant was pulling her legs and trying to take off her pants. M.C. stated she kicked defendant and tried to hold onto her pants. M.C. testified she told defendant to "stop, stop, stop," but defendant kept pulling off her pants and then he started to choke her. At that point, M.C. told defendant she needed water because she thought she could get away. Defendant allowed her to take a sip from a water bottle in the bedroom but then pulled her back down to the floor and pulled off her pants. M.C. testified she told defendant "no, no you supposed to be like a . . . brother-in-law, don't do this, no, don't, no, no." M.C. also testified she

---

[4] M.C. identified defendant in open court.

believed she would die and observed defendant searching for an object to hit her. At that point, M.C. asserted she "kind of gave up" and "just let him do it." Defendant told her to get on the bed and she eventually complied because she was scared. M.C. testified that defendant held her arms, took off his clothes, and raped her. She asserted defendant put "his penis in [her] vagina." M.C. stated she ultimately ceased telling defendant to stop because she was scared. M.C. also testified defendant ran his hand over her chest area on top of her clothes and put his "mouth in [her] vagina" at one point.[5] M.C. stated that once defendant finished ejaculating, defendant commented "it was so fast" and then he said "now you can sleep." Afterwards, defendant left through the front door.

M.C. testified she attempted to call her husband, and sent him a text to "come home now." She then called her mother to pick her up because she was scared to leave. Her mother picked her up and brought her to her mother's house located at 3239 Continental Drive. M.C. stated she told her husband to come to her mother's house. M.C. said she called 911 to report the rape while she was at her mother's house.[6]

M.C. testified an ambulance took her to the hospital where a rape kit was administered after she gave a statement to the police about the rape. M.C. also testified she was neither having an affair with defendant nor did she tell him that she was interested in a relationship. She further stated the rape occurred without her consent.

Liovel Silva, M.C.'s husband and defendant's half-brother, testified he allowed defendant to stay in the shed behind his residence. Mr. Silva confirmed their family was at the house on May 9, 2021 to celebrate Mother's Day. He stated

---

[5] M.C. stated defendant used his tongue.

[6] M.C. was shown photographs of her bedroom and explained how the events transpired with defendant. She also identified phone calls and text messages on her cell phone to show a timeline of the events and what she did immediately after the rape.

that during the celebration, he and M.C. did not take drugs, and defendant did not leave the shed except to smoke. After everyone left, he and M.C. went inside the house and defendant was still in the shed. Mr. Silva asserted he was "close but not as close" with defendant, and he only allowed defendant inside his house to use the bathroom or to shower. Mr. Silva testified he left for work early the next morning, around "4:45 or 5:00," on May 10, 2021, while M.C. was sleeping. Mr. Silva testified that when he was driving to work, M.C. called but he did not answer. He stated he pulled over and saw a text from M.C. stating "please come home now, it's an emergency." M.C called again and told him to "just get here, come home now" and to go to his mother-in-law's house. Upon his arrival, Mr. Silva stated M.C. was "frantic . . . scared . . . shaking and nervous, and crying." Mr. Silva testified M.C. told him defendant kicked in the door and raped her. He asserted the door was not hard to kick in. Mr. Silva averred M.C. called the police, and she subsequently went to the hospital. Mr. Silva testified that afterwards, defendant sent him a letter asking them for forgiveness and for M.C. to drop the charges.[7] Mr. Silva denied that defendant or M.C. said they were having an affair or that he saw signs of one. According to Mr. Silva, the rape affected his and M.C.'s relationship, and she still has flashbacks of the incident.

Officer Brent Donovan with the Kenner Police Department testified that he was dispatched on May 10, 2021 to 3239 Continental Place for a "call for service" concerning a rape. He stated he briefly interviewed M.C. before she was taken to the hospital. Officer Donovan asserted that M.C. said her brother-in-law raped her at her residence located at 632 Sessions Lane, and that defendant was probably still

---

[7] Mr. Silva read the letter, which stated:

> The letter says, brother, you know I don't write good English. I have someone helping me out. I'm sorry for everything that happened, but I still love you, brother. I hope you and [M.C.] forgive me for everything. I need you to make sure [M.C.] don't come to court date or see if she dropped the charges because they are trying to give me a life sentence.

Mr. Silva stated that defendant's nicknames are "Chickadee" and "Loco" and that the letter was signed from "Loco."

in the shed in the backyard. While he spoke to M.C., other officers were sent to M.C.'s residence where they located defendant. Once he arrived at the scene, Officer Donovan testified defendant was advised of his Miranda[8] rights, defendant indicated he understood his rights, and defendant was arrested. Officer Donovan testified he assessed the scene of the crime with a crime technician wherein evidence was collected and photographs were taken, which he identified in court.

After defendant was transported to the jail, Officer Donovan stated defendant was read his rights again from the Kenner Police Department's Advice of Rights form, and defendant signed the form. Officer Donovan asserted defendant admitted he had sex with M.C. multiple times. As a result of defendant's statement, Officer Donovan testified he obtained defendant's consent for a buccal swab.

Officer Donovan stated M.C. was taken to the hospital to receive a "rape examination," and he conducted another interview with M.C., which was consistent with her earlier statement at the scene. Officer Donovan testified that neither M.C. nor defendant advised him that they were having an affair or that they were angry at each other. He did not observe bruising on M.C.'s neck or wrist or any injuries on defendant.

Detective Peter Foltz with the Kenner Police Department testified he was assigned to conduct a follow-up investigation on the alleged rape in this case. After reviewing Officer Donavan's initial report, Detective Foltz stated he met with M.C. and obtained a recorded statement. Detective Foltz testified that M.C.'s statement was consistent with her prior statement, but she provided more details. Detective Foltz asserted that at that time, M.C. also informed him that her husband received a letter from defendant, which he reviewed. Detective Foltz averred that photographs were taken of the call history and text messages on M.C.'s cell phone, which showed

---

[8] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the time line of events as asserted by M.C. that occurred on May 10, 2021 after the rape (*i.e.*, phone calls and text messages to M.C.'s husband, mother, and father and the 9-1-1 call).

Nanette Morales testified she was working as a sexual assault nurse examiner at Tulane-Lakeside Hospital in May 2021 and conducted a sexual assault exam of M.C. on May 10, 2021, utilizing a "PERK" kit.[9] Ms. Morales stated M.C. described bruising on her legs and pain to her middle to lower back and neck. Ms. Morales testified that M.C. said her brother-in-law raped her and gave a narrative of what happened prior to her examination.[10] Ms. Morales testified that the physical examination was normal but opined that this was not inconsistent with M.C.'s statement regarding what happened to her. Ms. Morales documented four bruises on M.C.'s body (*i.e.*, on her chest, right and left thighs and right shin) and testified that these bruises were consistent with M.C.'s narrative.

Adriana Washington, an expert in the field of forensic DNA analysis, testified she analyzed several items from this case, including buccal swabs from M.C. and defendant. Ms. Washington asserted that the chemical presumptive test performed on the external genitalia perineal and "vaginal cervical" swabs tested positive for spermatozoa. A presumptive test for saliva on the external genitalia perineal swab was also positive. She asserted that the "epithelial fraction" of the external genitalia perineal swab taken from M.C and the DNA obtained from "sperm fraction" showed it was at least a hundred billion times more likely that the DNA originated from M.C.

---

[9] PERK is a physical evidence recovery kit utilized in sexual assault cases, which contains specific forms and the necessary materials to collect evidence from a victim. As part of the sexual assault exam, Ms. Morales collected M.C.'s clothing, took photographs of M.C., and took swabs of M.C.'s body.

[10] Ms. Morales testified that M.C. said the assault occurred at her house and defendant, her brother-in-law, was the perpetrator. Ms. Morales relayed that M.C. stated defendant placed his hands on her neck but did not apply pressure. M.C. said that after her husband left for work, she was asleep when defendant banged on her bedroom window and screamed her name. M.C. partially opened the back door and defendant pushed his way inside and she ran to the bedroom. M.C tried to close the door, but defendant pushed it open aggressively. M.C. told her that she felt defendant put his mouth on her vagina, he told her to kiss him, and he put his mouth on her mouth. M.C. also said defendant put his hands to her neck, telling her not to "make this hard." When defendant told her to get on the bed, her pants and underwear were already off. M.C. said that defendant put "it in her," and when questioned as to what that meant, M.C. indicated that defendant penetrated her with his penis. M.C. stated defendant "did it hard" and "spermed inside [her]."

and defendant than if it originated from her and an unknown contributor. Ms. Washington testified defendant was excluded as a contributor of the DNA as to the "epithelial fraction" of the vaginal cervical swab.

At trial, defendant testified on his own behalf and denied all allegations made by M.C. Specifically, defendant asserted he did not rape, choke, or injure M.C. He maintained he had consensual sexual relations with M.C. multiple times over a four to five month period, including on the morning of the alleged rape. He averred that on the previous night, they had agreed to have sex in the morning after his brother went to work. Defendant testified M.C. came to the shed to get him and brought him to her bedroom in the house. Defendant testified that after they had sex, he informed M.C. they could no longer have sex and he was planning to tell his brother about the affair when he returned home from work because he "felt bad." He asserted that M.C. reacted coldly. Afterwards, he returned to the shed and fell asleep. Defendant said the police arrived later that morning and arrested him. Defendant testified he informed the police, while at the police station, M.C. was lying and that they had an affair.

Defendant further admitted he sent a letter to his brother apologizing for the affair and requesting that M.C. drop the charges because he did not want to go to jail for something he did not do. Defendant then acknowledged the letter did not state he was having an affair with M.C. He testified that the letter did not state anything about the affair because he did not "like to write things like that, personal things on paper," and that his brother would not believe him.

**LAW and ANALYSIS**

In his *pro se* assignment of error, defendant challenges the sufficiency of evidence to convict him of third degree rape. Defendant contends M.C.'s testimony was not credible and it conflicted with the physical evidence. Accordingly,

defendant contends the evidence was insufficient to convict him of third degree rape and thus, the trial court also erred in denying his motion for new trial.

An appellate court, in reviewing the sufficiency of evidence, must determine if the evidence, whether direct, circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Chinchilla, 20-60 (La. App. 5 Cir. 12/23/20), 307 So.3d 1189, 1195, writ denied, 21-274 (La. 04/27/21), 314 So.3d 838, cert. denied, — U.S. —, 142 S.Ct. 296, 211 L.Ed.2d 138 (2021); State v. Sosa, 05-213 (La. 01/19/06), 921 So.2d 94, 99. Under the Jackson standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt, but rather, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution. State v. Flores, 10-651 (La. App. 5 Cir. 5/24/11), 66 So.3d 1118, 1122.

Review for sufficiency of evidence requires the reviewing court to defer to the trier of fact's rational credibility calls, evidence weighing, and inference drawing. State v. Clifton, 17-538 (La. App. 5 Cir. 05/23/18), 248 So.3d 691, 702. This deference to the fact-finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. State v. Caffrey, 08-717 (La. App. 5 Cir. 05/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La. 02/05/10), 27 So.3d 297; State v. McKinney, 20-19 (La. App. 5 Cir. 11/04/20), 304 So.3d 1097, 1102. Further, a reviewing court errs by substituting its appreciation of the evidence and the credibility of witnesses for that of the fact-finder and overturning a verdict on the basis of an exculpatory hypothesis of innocence

presented to, and rationally rejected by, the jury.  <u>State v. Lane</u>, 20-181 (La. App. 5 Cir. 01/27/21), 310 So.3d 794, 804.

In the instant case, defendant was charged with second degree rape but was convicted of the lesser responsive verdict of third degree rape.  At the time of the offense, third degree rape was defined in pertinent part as a rape where the anal, oral, or vaginal intercourse is deemed to be committed when the offender acts without the lawful consent of the victim.  See La. R.S. 14:41; La. R.S. 14:43 A(4).[11]

Defendant argues there is no evidence to establish that he committed third degree rape.  He asserts M.C.'s testimony was not believable or persuasive and the weight of the evidence was in his favor.  Defendant also avers that M.C.'s testimony conflicted with Officer Donovan's testimony and the evidence showed inconsistencies in M.C.'s story.  Defendant further contends that the DNA analysis confirmed he and M.C. had consensual sex and the State's expert conceded the injuries and bruising sustained by M.C. would be expected from a consensual encounter.

---

[11] The State alleged the offense occurred on May 10, 2021.  Thus, at the time of the offense, La. R.S. 14:41 provided the following definitions of rape:

A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.

B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.

C. For purposes of this Subpart, "oral sexual intercourse" means the intentional engaging in any of the following acts with another person:

(1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender.

(2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.

Further, third degree rape in violation of La. R.S. 14:43, provided in pertinent part:

A. Third degree rape is a rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of a victim because it is committed under any one or more of the following circumstances:

(1) When the victim is incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause and the offender knew or should have known of the victim's incapacity.

(2) When the victim, through unsoundness of mind, is temporarily or permanently incapable of understanding the nature of the act and the offender knew or should have known of the victim's incapacity.

(3) When the victim submits under the belief that the person committing the act is someone known to the victim, other than the offender, and such belief is intentionally induced by any artifice, pretense, or concealment practiced by the offender.

(4) When the offender acts without the consent of the victim.

At trial, the jury was presented with conflicting testimony. M.C. testified that defendant raped her, he strangled her, and left bruises on her. She asserted defendant put his penis into her vagina and his mouth on her vagina. M.C. testified she told defendant "no" and to "stop," but she gave up because she was afraid defendant was going to kill her. M.C.'s trial testimony was substantially similar to the narrative conveyed by her in the interview with Ms. Morales at the hospital and to her statements provided to the police. Furthermore, Ms. Washington testified that the buccal swabs from M.C.'s external genitalia perineal and "vaginal cervical" showed the DNA was at least one hundred billion times more likely to have originated from M.C. and defendant than from her and an unknown contributor.

On the other hand, defendant denied the allegations made by M.C. and claimed they were having an affair. Defendant testified he had sexual relations with M.C. multiple times over four to five months, including the morning of the alleged rape. Defendant asserted M.C. falsely alleged he raped her after he informed her he was going to confess about the affair to his brother (M.C.'s husband) because he "felt bad."

The credibility of a witness, including the victim, is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Tate, 22-570 (La. App. 5 Cir. 06/21/23), 368 So.3d 236, 244; State v. Gonzalez, 15-26 (La. App. 5 Cir. 08/25/15), 173 So.3d 1227, 1233. The testimony of the victim alone can be sufficient to establish the elements of a sexual offense. Gonzalez, 173 So.3d at 1232; Lane, 310 So.3d at 804; State v. Bruce, 14-877 (La. App. 5 Cir. 03/25/15), 169 So.3d 671, 675, writ denied, 15-833 (La. 03/04/16), 187 So.3d 1007. It is presumed the trier of fact considered discrepancies in testimony in assessing credibility and weight of testimony. State v. Bridgewater, 22-517 (La. App. 5 Cir. 4/26/23), 362 So.3d 998, 1007; Gonzalez, 173 So.3d at 1232. Thus, the reviewing court must defer to the trier of fact's rational

credibility calls, evidence weighing, and inference drawing. <u>Clifton</u>, 248 So.3d at 702. In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. <u>Lane</u>, 310 So.3d at 804. This court should not second-guess credibility determinations. See <u>Lane</u>, *supra*; <u>State v. Hernandez</u>, 14-863 (La. App. 5 Cir. 9/23/15), 177 So.3d 342, <u>writ denied</u>, 15-2111 (La. 12/05/16), 210 So.3d 810; <u>State v. Anderson</u>, 09-934 (La. App. 5 Cir. 03/23/10), 38 So.3d 953, <u>writ denied</u>, 10-908 (La. 11/12/10), 49 So.3d 887.

Presented with conflicting testimony, the jury apparently believed M.C.'s version of the events, instead of defendant's version. Viewing the evidence in the light most favorable to the prosecution, we find the State presented sufficient evidence to support defendant's conviction of third degree rape. We further find the trial court did not abuse its discretion in denying defendant's motion for new trial.

In his counseled assignments of error, defendant challenges his sentence and also asserts ineffective assistance of counsel as to his sentence.[12] Because we find an error patent that requires defendant's sentence to be vacated, we pretermit all of defendant's counseled assignments of error concerning his sentence. See <u>State v. Bienvenu</u>, 14-541 (La. App. 5 Cir. 12/16/14), <u>writ denied</u>, 15-98 (La. 11/20/15), 180 So.3d 314; <u>State v. Colbert</u>, 04-538 (La. App. 5 Cir. 11/30/04), 889 So.2d 1128, 1134.

**ERRORS PATENT**

The record was reviewed for errors patent, according to the mandates of La. C.Cr.P. art. 920; <u>State v. Oliveaux</u>, 312 So.2d 337 (La. 1975); and <u>State v. Weiland</u>,

---

[12] Defendant's counsel asserted the following assignments of error:
  (1) the trial court erred in imposing an excessive sentence;
  (2) the trial acourt erred by failing to comply with the sentencing mandates of La. C.Cr.P. art. 894.1;
  (3) the trial court erred by failing to order a pre-sentence investigation report;
  (4) the trial court erred by denying the motion to reconsider sentence; and
  (5) defendant received ineffective assistance of counsel because his counsel failed to articulate in the motion to reconsider sentence the trial court's omissions with respect to compliance with C.Cr.P. art. 894.1, and its failure to order a pre-sentence investigation report.

556 So.2d 175 (La. App. 5 Cir. 1990). Our review reveals the trial court failed to observe the twenty-four hour delay between the denial of defendant's motions for post-verdict judgment of acquittal and new trial and sentencing as mandated by La. C.Cr.P. art. 873. See also, State v. Key, 23-167 (La. App. 5 Cir. 12/27/23), 2023 WL 8902887; State v. Perez-Espinosa, 19-601 (La. App. 5 Cir. 9/22/20), 302 So.3d 598, 603. There is no indication in the record before us that defendant waived this delay.

When a defendant challenges the sentence imposed and the imposed sentence is not mandatory, the failure to observe the twenty-four hour delay mandated by law cannot be considered harmless error. State v. Chester, 19-363 (La. App. 5 Cir. 02/03/21), 314 So.3d 914, 989, writ denied, 21-350 (La. 6/8/21), 317 So.3d 321; Bienvenu, 167 So.3d at 70. Generally, when a defendant challenges a non-mandatory sentence and the delay is not waived, the defendant's sentence must be vacated and the matter remanded for resentencing. State v. Taylor, 20-215 (La. App. 5 Cir. 04/28/21), 347 So.3d 1008, 1022. A defendant's pronouncement of his readiness for sentencing may operate as an express waiver of the twenty-four hour sentencing delay, but a defendant's mere participation in the sentencing hearing is insufficient to constitute an express waiver as required by La. C.Cr.P. art. 873. State v. Kisack, 16-797 (La. 10/18/17), 236 So.3d 1201, 1205-06, cert. denied, 583 U.S. 1160, 1385 S.Ct. 1175, 200 L.Ed.2d 322 (2018)

In this case, defendant's sentence was not mandatory, defendant did not waive the twenty-four hour delay, and on appeal, defendant is challenging his sentence and asserting ineffective assistance of counsel as to his sentence.[13] Given these circumstances, we vacate defendant's sentence and remand the matter for resentencing.

---

[13] La. R.S. 14:43 provides, "Whoever commits the crime of third degree rape shall be imprisoned at hard labor, without benefit of parole, probation, or suspension of sentence, for not more than twenty-five years."

**DECREE**

For the reasons stated herein, we affirm defendant's conviction, vacate his sentence, and remand this case for resentencing.

**<u>CONVICTION AFFIRMED;</u>**
**<u>SENTENCE VACATED; REMANDED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JULY 3, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

## 23-KA-387

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE MICHAEL P. MENTZ (DISTRICT JUDGE)
ANDREA F. LONG (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          GWENDOLYN K. BROWN (APPELLANT)

**MAILED**
LIOVEL GRANADO-GONZALES #777787          HONORABLE PAUL D. CONNICK, JR.
(APPELLANT)                              (APPELLEE)
RAYBURN CORRECTIONAL CENTER              DISTRICT ATTORNEY
27268 HIGHWAY 21                         LAURA S. SCHNEIDAU (APPELLEE)
ANGIE, LA 70426                          DISTRICT ATTORNEY
                                         LEO M. AARON (APPELLEE)
                                         ASSISTANT DISTRICT ATTORNEYS
                                         TWENTY-FOURTH JUDICIAL DISTRICT
                                         200 DERBIGNY STREET
                                         GRETNA, LA 70053